GEORGE GARRISON v. STATE.

No. A-3416. Opinion Filed Sept. 14, 1920.
Rehearing Denied May 10, 1921.
(197 Pac. 517.)
(Syllabus.)

1.  Homicide—Shooting with Intent to Kill—Sufficiency of Evidence. In a prosecution for shooting with intent to kill, evidence considered, and held sufficient to support the verdict and judgment of conviction.

2.    **Same—Instructions.** See opinion for correct instructions applicable to the facts.

Apeal from District Court, Washita County; Thomas A. Edwards, Judge.

George Garrison was convicted of shooting with intent to kill, and he appeals. Affirmed.

Massingale & Duff, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall and E. L. Fulton, Asst. Attys. Gen., for the State.

DOYLE, P. J.  The information in this case charges that in Washita county, on or about the 12th day of November, 1917, George Garrison did shoot one Henry Frost with a shotgun, with intent of him, the said Garrison, to kill the said Frost.  On his trial the verdict of the jury found him guilty of shooting another with intent to kill, as charged in the information, and that they were unable to agree upon the punishment.  On the 9th day of February, 1918, the court rendered judgment, and sentenced the defendant to be confined in the State Reformatory at Granite for a period of 18 months.  From the judgment he appeals.

The principal contention is that the evidence is insufficient to sustain the verdict in that there was no testimony tending to establish an intent to kill.  The defendant, George Garrison, and Henry Frost were neighbors. About 30 days prior to the date of the offense charged they had a dispute in the town of Sentinel over the price to be paid by Frost to Garrison for hauling a load of hogs.  Frost gave Garrison a check for $3 and he claimed 50 cents more, which was paid by Frost. At that time Frost threatened to strike Garrison with a wagon rod.  Tom Jerrell, who was living at the home of Frost, purchased about 11 acres of kaffir corn from Garrison, and gave him his check for $300. the purchase price.  On the date alleged

Tom Jerrell, with Henry Frost, drove two wagons into Garrison's field by laying down the fence. Garrison left his house, and went to where the parties were, and stated to Frost that he did not want him on his premises, and for him to get off. Frost told him that he would have to put him off. Thereupon Garrison started back to his house and called Jerrell to come with him. They talked 15 or 20 minutes about why Frost was on the premises and Garrison told Jerrell that he did not want any trouble with Frost and for him to go back to Frost and tell him to leave. Frost was gathering kaffir corn, and the defendant took a shotgun, both barrels of which were loaded, and went out to where Jerrell and Frost were, and again told Frost that he must leave. Thereupon Frost got into his wagon and the defendant shot him.

Henry Frost testified:

"Mr. Jerrell came back and told me that Garrison still wanted me to leave. I told him I didn't think it was any use of leaving, it was our feed; and in just a few minutes I saw the defendant coming back with a shotgun. He walked up to about thirty steps of the wagon and said, 'By God, I told you to leave here.' As he threw up the gun, I turned my face to keep him from shooting me in the face. He fired, the shot struck me, and I drove on."

Dr. Baker testified:

"I am a practicing physician in this county, and was called to see Henry Frost professionally. I found him suffering from the effects of a gunshot wound; the highest shot was in his cheek, one in his neck, and quite a few in his arm, and several in the abdomen and down his leg to about the knee. Most of the shot entered from just under the arm to the point of the hip on the right side. I found the lung and liver punctured; also the stomach. My examination was about six hours after he was shot. He was suffering from a very severe shock when I first saw him. We found some blood in the abdominal cavity. His condition was very serious."

As a witness in his own behalf defendant testified:

"I had some maize that I sold to Tom Jerrell, who was working for Mr. Frost at the time. I did not know that Mr. Frost was purchasing any interest in it until the morning they came over to gather it. They drove into the field with two wagons, Jerrell in front and Frost behind him. I went over, and discovered it was Mr. Frost, and asked him to get off my place; and he said he would not do it, that he had a right there. I told him he did not, and he gave me the lie. I started back to the house, and he said: 'Hit a six-cylinder gait and get your old gun; you won't shoot.' I called Mr. Jerrell to the house, and talked to him 15 or 20 minutes. I said: 'What does this mean? You know I don't want any dealings with Mr. Frost.' And he said he was his partner. I told him to go out there and get him to leave, and Mr. Jerrell went out, and never made much of a stop with Mr. Frost, that I could detect; so I went in the house and got my gun, and before I got very close to him Mr. Frost jumped into his wagon. I walked on a little further, and I said: 'Ain't you going to leave here?' He said: 'No, and you can't make me.' When I shot him, he asked me not to shoot any more, and I stopped with another load in the barrel, and he drove out of the field. I didn't aim to hit him. I didn't really know that I had shot him."

He was then asked:

"Q. Just tell the jury in your own way why you shot and how came you to shoot at the time you did. A. Well, I had tried to get him to leave, and he would not do it, and said that I couldn't make him; and when I went out there with my gun, and he got into his wagon, I expected he was going in for some kind of arms, from the trouble we had in Sentinel. I just aimed by the side of him—didn't aim to hit him."

The general rule is that a man shall be presumed to intend that which he does, or which is the natural and necessary consequence of his act, and in this class of cases an intent to kill may be presumed from the character of the weapon used and the wounds inflicted. Obviously the question of the defendant's intent on the undisputed facts in this case, as

against the defendant's statement that he did not aim to hit him was for the determination of the jury. Carefully considering the whole testimony in the case, we are satisfied with the conclusion arrived at by the jury in its judgment of the force of the evidence.

Error is assigned in the giving and refusing of instructions. It is urged that "the instructions given do not in plain and unambiguous language tell the jury that they should acquit the defendant of the crime charged in the information in the event that there was a failure of the evidence on the question of intent," and for this reason the court erred in refusing to give a requested instruction. The instructions given properly define the crime of assault by shooting another with intent to kill, and the included offense of shooting another with intent to injure, although without intent to kill.

Among other instructions given by the court are the following:

"To the information and the offense charged therein the defendant has entered his plea of not guilty, and you are instructed that by his plea of not guilty this defendant, as every defendant in a criminal case, is presumed by law to be innocent of the offense charged against him and of every ingredient thereof, and that this presumption abides with him throughout the whole case, until it is overcome by competent evidence to your satisfaction, beyond a reasonable doubt, after consideration of all the evidence and the instructions of the court, and the burden is upon the state to prove the same beyond a reasonable doubt. And, if you have a reasonable doubt, after consideration of all the evidence and the instructions of the court, as to the defendant's guilt, it is your duty to resolve that doubt in his favor and acquit him. But if, after due consideration of all the evidence, facts, and circumstances in the case, together with the instructions of the court, you are convinced of his guilt beyond a reasonable doubt, it is your duty to convict him."

"You are further instructed that if you find and believe from the evidence, beyond a reasonable doubt, that the defendant, on or about the 12th day of November, 1917, did intentionally and wrongfully shoot one Henry Frost, as charged in the information, with the intent to kill said Henry Frost, it will be your duty to find the defendant guilty; but if, after considering all of the evidence, facts, and circumstances in the case, you have a reasonable doubt as to whether or not the defendant, at the time he shot the said Henry Frost, intended to kill said Henry Frost, you will then consider whether or not said defendant is guilty of the less offense of shooting said Henry Frost with the intent to injure the said Henry Frost, although without intent to kill said Henry Frost, or to commit any felony, and if, after considering all of the evidence, facts, and circumstances in the case, you find and believe from the evidence beyond a reasonable doubt that the defendant did, without excusable or justifiable cause, shoot the said Henry Frost, with the intent to injure him although without intent to kill the said Henry Frost, it will be your duty to return a verdict of guilty of said lesser offense; but if, after considering all the evidence, facts, and circumstances in the case, you have a reasonable doubt of the guilt of the defendant of the crime of intentionally and wrongfully shooting another with intent to kill, and of the crime of shooting another without justifiable or excusable cause, with intent to injure, although without intent to kill, then it will be your duty to return a verdict of not guilty.

Defendant excepts.

"Thos. A. Edwards, Judge."

"You are further instructed that if you believe from the evidence that the said Henry Frost was, at the time of the shooting complained of, trespassing upon the real estate belonging to or in the possession of the defendant, George Garrison, the defendant, George Garrison, had the right to go where the said Henry Frost was trespassing, if you find he was trespassing, and to request him to leave and vacate such premises; but in this connection you are further instructed that a mere trespass upon the land in possession of another, even after the trespasser has been warned to depart and has refused, does not justify the landowner or person in possession

of such land to use a dangerous or deadly weapon to resist the trespasser or to expel him from such land, as the law does not justify the use of a de▲▲ weapon or the endangering of the life of another to r. .r a mere trespass or invasion of real estate in the possession of another, where there is no actual or apparent attempt on the part of the trespasser to commit a felony thereon.''

Defendant excepts.

"Thos. A. Edwards, Judge.''

The instructions of the court excepted to were clearly correct, and the charge of the court was a correct exposition of the law applicable to the facts.

Finding no error in the record, the judgment is affirmed.

ARMSTRONG and MATSON, JJ., concur.