# JOE DYER et al. v. STATE.

No. A-8907.   Jan. 10, 1936.
(53 Pac. [2d] 700.)

Victor C. Phillips and J. A. Shirley, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., for the State.

DOYLE, J. The information in this case, filed in the district court of Bryan county May 23, 1933, charged that the defendants Joe Dyer and Norman Dyer did in said county on or about the 26th day of November, 1932, commit the crime of assault with intent to kill; that is to say, the defendants did then and there unlawfully, willfully, and feloniously and without justifiable or excusable cause, make an assault in and upon one S. K. Thornton with a certain gun and car spring, the same being dangerous and deadly weapons, and did then and there with said gun and car spring strike, beat, wound, cut, and injure the said S. K. Thornton, with the unlawful, wrongful, and felonious intent then and there on the part of them, the said Joe Dyer and Norman Dyer, to do great bodily harm and injury and to kill said S. K. Thornton.

On their trial, the jury returned a verdict finding "the above named defendants guilty as charged and assess their punishment at two and one half years in the state penitentiary."

Motion for a new trial was duly filed and overruled. From the judgment entered November 7, 1934, in conformity with the verdict, they appeal.

The errors assigned and relied upon for a reversal of the judgment are: That the court erred in its instructions to the jury; that the defendants did not receive that fair and impartial trial to which they are entitled under the law; that the verdict of the jury is contrary to law and to the evidence.

It appears from the evidence that the prosecuting witness, Thornton, and his father had been living with Ab Dyer, father of the defendants, on Ab Dyer's farm; that a day or two before the difficulty Ab Dyer moved about half a mile from this place, but still had his household goods and his farm tools at his home place, and also his potatoes in the cellar.

It also appears that the prosecuting witness and Ab Dyer are cousins, and that there had been a family controversy.

The prosecuting witness testified that he had made a crop that year together with Ab Dyer; that he was in the yard chopping up some rabbits he had killed that day to feed his chickens; that his shotgun was leaning against a tree, and the defendants came there in a wagon and Ab Dyer and Bert McDaniel were walking; that Joe Dyer jumped out of the wagon, picked up the shotgun, held it on him, and said, "You poisoned my father's mule"; he told Joe to be careful, that the gun was loaded; that Norman hit him on the head twice with a car spring and knocked him down and he heard Joe tell him not to hit him any more, and that Ab Dyer, their father, kicked him, then told Norman not to hit him again; that he asked Joe to take him into the house and shave his head before it got sore, and Joe said the Arkansas boy, Bert McDaniel, "who is also some kin to us," would do it; that the mule they worked the crop with died a day or two before.

Dr. G. M. Rushing testified that S. K. Thornton came to his office for treatment; that he had quite a gash on his head, another one on his face, with one or two teeth out; that he was not in a dangerous condition; that there was no fracture and no concussion; that the car spring introduced in evidence is a dangerous instrument.

The testimony of the defendants as witnesses in their own behalf was to the effect that they stopped at their father's home to get some potatoes out of the cellar; the prosecuting witness said, "I have been hearing you boys accuse me of poisoning that mule and I am going to stop that," and then started for the shotgun; that Joe Dyer grabbed the gun and unloaded it; then Thornton started towards Norman Dyer and struck at him with an axe; Norman dodged and picked up a car spring from the ground and struck Thornton twice with it.

Ab Dyer, father of the defendants, testified that he walked up, and Thornton raised up his axe and started after Norman; then Norman picked up this car tool and hit him with it; that Joe unloaded and was holding Thornton's double-barrel shotgun; that he did not strike or kick Thornton.

A number of witnesses testified that they knew the general reputation of the defendants in that community for more than fifteen years as to being peaceable and law-abiding citizens or otherwise and their reputation was always good.

Upon a careful examination of the record and the evidence in this case, our conclusion is that the judgment in this case cannot be permitted to stand. It also appears that the verdict is too indefinite and uncertain to support a conviction of the highest degree of the offense charged.

The statute under which this information was prosecuted reads:

"Every person who intentionally and wrongfully shoots, shoots at, or attempts to shoot at another, with any kind of firearm, airgun or other means whatever, with intent to kill any person, or who commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death or in resisting the execution of any legal process is punishable by imprisonment in the penitentiary not exceeding ten years." Section 1873, St. 1931.

The information alleges all the essential ingredients of the offense as defined by the second clause of this section.

The information is also sufficiently direct and certain to charge a violation of the included offense defined by section 1870 and section 1874 of the Penal Code.

These offenses are all of the same character. An assault and battery with intent to kill necessarily includes an assault with intent to kill, also an assault with intent to do bodily harm; and an assault and battery by means of a deadly weapon necessarily includes an assault with any dangerous weapon, and every battery includes an assault. Clemons v. State, 8 Okla. Cr. 452, 128 Pac. 739; Love v. State, 12 Okla. Cr. 1, 150 Pac. 913.

The record discloses that exceptions were taken to certain instructions given by the court.

The court instructed the jury that the defendants were charged with the offense defined by section 1873, of assault and battery of another by means of any deadly weapon, or by such other means or force as is likely to produce death, and that the same is punishable by imprisonment in the penitentiary not to exceed ten years.

The court also instructed on the lesser included offense defined by section 1870, of assault upon the person of another with any sharp or dangerous weapon or other means whatever with intent to injure, although without intent to kill such person or to commit any felony.

The court did not submit the issue on section 1874 of assault with intent to kill.

The court further instructed the jury as follows:

"No. 8. You are instructed that if the defendants went to the home of the prosecuting witness for the purpose of raising a row with him and giving him a whipping, then they cannot plead self-defense in this case, and if under such circumstances they struck the defendant with an iron spring from a Ford car on the head and you believe that such spring is a dangerous and deadly weapon and from the mode and manner of its use it was likely to produce death, or pointed a loaded, cocked shot gun at S. K. Thornton in a threatening manner, then they would be guilty as charged. (Excepted to by defendants. Exceptions allowed. Porter Newman, Judge.)"

This instruction is not a correct statement of the law, in that in its concluding clause, "or pointed a loaded, cocked shot gun at S. K. Thornton in a threatening manner, then they would be guilty as charged," it submits an issue under the first clause of section 1873, providing:

"Every person who intentionally and wrongfully shoots, shoots at, or attempts to shoot at another, with any kind of firearm, airgun or other means whatever, with intent to kill any person."

The information in this case does not properly charge the offense under this clause, and the evidence shows no facts or circumstances tending to prove an attempt to shoot with intent to kill, and the court should have instructed the jury: That, if you find and believe from the

evidence, beyond a reasonable doubt that the defendants went to the home of the prosecuting witness for the purpose of raising a row with him and giving him a whipping, and did commit an assault and battery with intent to kill as charged in the information, then they cannot plead justification in self-defense.

The court further instructed the jury as follows:

"No. 9. You are further instructed that the prosecuting witness in this case had a perfect right to use such force as was necessary to eject and drive the defendants from his premises. (Excepted to by defendants. Exceptions allowed. Porter Newman, Judge.)"

This instruction is not only subject to the criticism that it invades the province of the jury, but it is not a correct statement of the law applicable to the evidence in this case. The testimony on the part of the defense shows that the defendants were not trespassers; that they were where they had a right to be, on the premises of their father, who was with them at the time; that the prosecuting witness, during the altercation about the mule, attempted to get his shotgun and was prevented by the defendant Roy Dyer; that he then assaulted the defendant Norman Dyer with an axe. Upon the whole case, the evidence is in direct conflict as to who was the aggressor. In this conflict of evidence it was the province of the jury to determine which of the versions given by the witnesses was the true one. A person may resist a trespass on real property in his possession, and may eject the trespasser therefrom by the use of any reasonable force short of taking or endangering human life; but, if he is unable to prevent a trespass, where no felony is attempted, by any means short of taking or endangering human life, he must suffer the trespass, as the law does not justify the use of

a deadly or dangerous weapon or endangering the life of another to repel a mere trespass where there is no actual or apparent attempt on the part of the trespasser to commit a felony thereon. Garrison v. State, 19 Okla. Cr. 3, 197 Pac. 517; Jackson v. State, 49 Okla. Cr. 337, 293 Pac. 567; Schmitt v. State, 57 Okla. Cr. 224, 47 Pac. (2d) 199.

It follows that the court had no right, in charging the jury, to assume that the defendants were trespassers, and that the prosecuting witness was without fault in bringing on the difficulty.

The instructions in all cases should be applicable to the facts and to all proper deductions and interpretations of them, and not to questions not presented or covered by the evidence.

The case having been tried upon a wrong theory and the issues under the information and the evidence not having been correctly submitted to the jury, all to the prejudice of the substantial rights of the defendants, we are of the opinion that the defendants were not accorded that fair and impartial trial to which they are entitled under the law.

Inasmuch as the cause must be remanded for another trial, it is fitting to observe that the information, to which no objection was made, confuses the first and second clause of section 1873. It also includes the language of section 1874, and at the outset the offense is denominated as in section 1870.

It is evident that the county attorney in drawing the information confused these sections. Upon the undisputed facts, this prosecution should have been under section 1870.

For the reasons stated, the judgment of the district court of Bryan county is reversed, and the cause remanded to be proceeded with in accordance with the views herein expressed.

DAVENPORT, P. J., and EDWARDS, J., concur.