# J. T. JONES v. STATE.

No. A-8738.   March 27, 1936.
(56 Pac. [2d] 423.

Ira A. Hill and Guy D. Talbot, for plaintiff in error.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

EDWARDS, P. J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court of Alfalfa county of manslaughter in the first degree, and was sentenced to serve a term of ten years in the state penitentiary.

At the time charged defendant was a caretaker of a tract of land held by the Saline Game Preserve, a corporation, hereinafter referred to as the preserve, and deceased had a farm adjoining this on the south, on a part

of which he had a garden. Formerly a small stream flowed across a corner of the deceased's land, and he had used its waters to irrigate this garden, but the stream had been diverted above the lands of the preserve into a pond or lake on the preserve. On previous occasions deceased had broken the dike where the stream was diverted, in order that the water might continue to flow across his land, and this had occasioned a controversy between deceased and defendant as custodian of the preserve, and a civil suit had grown out of it. There is also evidence of threats by deceased against defendant and the owners of the preserve. On the day of the homicide, according to the state's evidence, deceased had caused the water to turn from the course where it was diverted to flow across his land, and defendant was again diverting it to the lake on the preserve, when deceased, with a hoe in his hand, accompanied by one Adams and one Graves, appeared on the scene for the purpose of removing the obstruction and again permitting the water to flow across his land. Deceased was in advance of Ames and Graves and went on the embankment of the lake, and, as he did so, he was ordered by defendant, "Get the hell out of here." Deceased responded in an angry manner, and defendant then, who was some 75 or 80 feet from deceased, fired at him with a shotgun, several shot of which pierced his heart and caused his death in a few seconds. There is evidence that at the time the shot was fired defendant was in a stooped over position and that the shooting was deliberate.

There is a conflict in the evidence. Defendant testified he had been working on the ditch when he saw deceased, Ames, and Graves coming; that on account of previous difficulties he was afraid of deceased, and that just before the shooting deceased made a threat; that de-

ceased had a hoe and said, "I told you that whenever I caught you on this land I was going to chop your head off"; that he ran towards the car; that deceased came near him and then turned back to the dam, and that defendant then came back and had some conversation with deceased, who had opened the drain pipes, and, when deceased came toward him a second time and was twelve or fifteen steps from him, he fired at him with a shotgun, and that after he fired the deceased came two or three steps and then turned back; that the gun was loaded with heavy duck shot and he fired because he believed he was in danger. His testimony tends to make a case of self-defense, although it is not clear that he believed he was in imminent danger at the time he fired the fatal shot. The evidence amply supports a judgment for manslaughter in the first degree.

The first contention made is that the court did not correctly instruct the jury on the law of self-defense, in that it did not specifically tell the jury that defendant, at the time he fired the fatal shot, was in a place where he had a right to be. The court gave rather full instructions on self-defense, to which defendant reserved a general exception. No additional requests for instructions were made. The jury are told in several instructions in substance if they find defendant had a reasonable ground for believing, and did believe, at the time of the homicide, viewed from his standpoint, that he was in danger of death or great bodily harm at the hands of deceased, and that there was a present necessity to kill deceased in order to save himself therefrom, under such circumstances he would be justified and should be acquitted. No point appears to have been made on the point complained of. The motion for new trial does not point out any instruction as erroneous nor assign as error failure of

the court to instruct on any matter, but contains merely the general allegation that the court misdirected the jury in matters of law. It is settled by many decisions that an alleged error, unless fundamental in character, is waived and will not be considered on appeal unless it was excepted to at the time and then presented to the trial court in a motion for new trial and an adverse ruling excepted to. The fact that defendant was in a place where he had a right to be and deceased at the time of the homicide was a trespasser would not justify the defendant in shooting him, unless at the time deceased made some overt act which, viewed from the defendant's standpoint, led him to believe he was in danger of death or some great bodily harm and the instructions so state. Schmitt v. State, 57 Okla. Cr. 102, 47 Pac. (2d) 199; Jackson v. State, 49 Okla. Cr. 337, 293 Pac. 567; Garrison v. State, 19 Okla. Cr. 3, 197 Pac. 517.

Next it is argued the court erred in excluding the offer in evidence of a certain injunction order and bond. It appears that in August, 1926, in an action by Mina L. Matthews and the Saline Game Preserve v. J. F. Corbet, the deceased, the county judge made an order enjoining Corbet from interfering with a ditch or waterway until further order of the district court, upon the execution of bond in the sum of $600. The bond, at that same time, appears to have been executed in blank. This was excluded, no doubt, because the order for injunction was a mere temporary order and the bond not in conformity to the order and the proceeding too remote to shed any light on the case. Certainly a temporary injunction order made in August, 1926, which by its terms provided that it should continue till the final disposition of the action or till further orders of the district court, would not have remained in force for some eight years. Deceased was

no more nor less a trespasser, whether there was or was not an order of injunction, and defendant's right to shoot him was no less nor greater whether he was or was not enjoined. The offer was properly excluded.

Complaint is next made that in his closing argument to the jury counsel assisting the prosecution commented on the fact that none of the employers of defendant appeared at the trial. This argument is rather far-fetched and is of no consequence. We fail to see how it was prejudicial to defendant; it appears to us it was rather critical of the employers of defendant, and would tend, if it had any significance, to create a sympathy for him. It is not every improper or poorly chosen argument that will constitute error. It is only when improper argument is such as may influence the verdict that it will warrant interference by an appellate court. The argument here does not fall within the inhibition announced by this court in many cases.

Upon a consideration of the entire record, we are satisfied defendant had a fair trial and that there is no reason for this court to interfere with the judgment. The case is affirmed.

DAVENPORT and DOYLE, JJ., concur.

DAVENPORT, J. I concur in the opinion of the majority of the court that the evidence, though conflicting, is sufficient to sustain a conviction; but, after carefully considering all the circumstances and facts as disclosed by the record leading up to the killing, I feel the punishment imposed by the court, on the verdict of guilty of manslaughter in the first degree, returned by the jury, under the facts and circumstances as disclosed by the record, is excessive, and should be modified to the minimum under the statute of four years.