# GEORGE FINLEY v. STATE.

No. A-10619.    June 11, 1947.

(181 P. 2d 849.)

310

312

Looney, Watts, Fenton & Eberle, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. The defendant, George Finley, a constable in Oklahoma county, was charged, tried, convicted of the crime of bribery, and his punishment assessed at one year in the county jail and a fine of $500. The jail sentence was suspended.

There are numerous assignments of error, which we will consider under the various propositions set forth in the defendant's brief.

In his first proposition, George Finley complains that the preliminary information was not sworn to by W. N. Mounger, assistant county attorney, the complaining witness. This objection was first raised in the district

court, after the information had been filed. In this connection, the law is well settled by many decisions of this court, as well as the general rule, that an unverified complaint is good for all purposes, except as the basis for the issue of a warrant of arrest. If, however, a warrant of arrest is issued on an unverified complaint, the law is likewise settled that, the objection must be raised at the earliest opportunity by a motion to quash before arraignment and plea. When the defendant has been apprehended, on an unverified complaint, and arraigned and submits to the jurisdiction of the magistrate, and has a preliminary trial on said complaint without ever challenging the sufficiency of the complaint for lack of verification, that defect is waived. State v. Jackson, 57 Okla. Cr. 277, 48 P. 2d 861; Steiner v. State, 33 Okla. Cr. 298, 243 P. 1002; Conti v. State, 45 Okla. Cr. 105, 282 P. 182. If the defendant had filed his motion to quash the warrant of arrest, prior to his arraignment and plea of not guilty, his plea would have been well taken and should have been sustained. Conti v. State, supra. But, not having done so, he waived the objection and cannot now be heard to complain of his arrest on the unverified complaint. This objection is therefore without merit.

The defendant's next contention, under his first proposition, is that the court erred in not sustaining his demurrer to the information. This contention is founded on the proposition that the information charges extortion and not bribery. For a consideration of this contention, the charging part of the information reads as follows, to wit:

"That is to say, the said defendant, George Finley, being then and there Constable of Rural District No. 2, Oklahoma County, State of Oklahoma, appointed, qualified and acting as such, and said defendant, Finley being then and there charged by law to perform the duties of his

office with fidelity, and not to knowingly receive, directly or indirectly, any money or other valuable thing for the performance or non-performance of any act or duty pertaining to his office, did then and there corruptly receive and accept, for the use and benefit of himself, a certain sum of money, to wit: Forty and 00/100 Dollars ($40.00), good and lawful money of the United States of America, and one pint of Green Label, tax paid, James Stewart brand, straight bourbon whisky, as a gift and gratuity in consideration of the non-performance of the official services of said defendant in his capacity as said Constable, and said money so accepted as aforesaid was accepted by said defendant in consideration of the promise by said defendant of the nonperformance of the official duty of said defendant, in the manner and form as follows, to wit:

"That is to say, the said defendant aforesaid did, while acting as an officer as aforesaid, communicate with one Ruth Fugatt, who was, for some days prior to the date aforesaid, engaged in the business of dispensing spiritous liquors, contrary to the penal code of the State of Oklahoma; that said defendant did, some days prior to the date aforesaid, and at the time of said communication, know that said Ruth Fugatt was engaged in the business aforesaid, being commonly referred to as 'bootlegging'; that said communication and conversation with said Ruth Fugatt occurred some two or three days prior to the date above mentioned, and said defendant stated to said Ruth Fugatt, who was known to be a 'bootlegger' to said defendant, in substance, that he would perform his duty under the law, insofar as her business was concerned, by securing search warrants and raiding her, unless she agreed to pay him the sum of Ten and 00/100 Dollars ($10.00) and one pint of whisky per week, in advance, and, in this connection, said defendant demanded the sum of Forty and 00/100 Dollars ($40.00), in advance together with the one pint of whisky.

"That, after said conversation between the defendant and said Ruth Fugatt, the defendant delivered an ultimatum to said Ruth Fugatt aforesaid, which, in effect

and substance, provided that unless she agreed to pay him the money and whisky demanded by him, he would commence performing his duty as a law enforcement officer and constable on Saturday, January 22nd, 1944; that he would give said Ruth Fugatt until that time to decide whether or not she would comply with his ultimatum.

"That, on the 22nd day of January, 1944, as aforesaid, said Ruth Fugatt did comply with said defendant's ultimatum, by delivering to him Forty and 00/100 ($40.00) Dollars, good and lawful money of the United States of Amercia, in the following denominations: two (2) ten dollar bills, numbered J 26077735 A and J 20327817 A; three (3) five dollar bills, numbered F 93896608 A, L 25858372 A, and K 14043475 A; and five (5) one dollar bills, numbered Z 49390616 B, I 65205358 C, E 33599869 C; G 64598223 C, and I 08908773 B; that said money was delivered by the said Ruth Fugatt to the said defendant pursuant to the demand and ultimatum of the defendant, as aforesaid, near the Elmwood Dance Hall, on South Shields Boulevard, in Oklahoma County, State of Oklahoma.

"That, thereafter, the said Ruth Fugatt informed other law enforcement officers of Oklahoma County, State of Oklahoma, of the said defendant's demand and her compliance therewith; whereupon, said defendant was taken into custody by the Sheriff's Office of Oklahoma County, Oklahoma, at which time said defendant had on his person the aforementioned money, less one (1) one dollar bill, and the pint of whisky, which had been delivered by the said Ruth Fugatt to said defendant.

"Your informant further states that said defendant, on the evening of the 22nd of January, 1944, after 8:00 P.M., at which time the 'pay-off' aforesaid was made, noticed law enforcement officers of Oklahoma County, Oklahoma, in the Elmwood Dance Hall, and called said Ruth Fugatt, to warn her that the said officers were at the dance hall and cautioned her to 'lay low' in compliance with his previous agreement not to enforce the law against

the said Ruth Fugatt and to afford her protection against the law enforcement agencies of this County and State.

"And, the said defendant, George Finley, then and there being Constable of Rural District No. 2, Oklahoma County, State of Oklahoma, duly appointed, qualified and acting as such, and being then and there charged by law to perform the duties of his office with fidelity and not to knowingly receive, directly or indirectly, any money or other valuable thing for the performance or non-performance of any act or duty pertaining to his said office, did then and there corruptly accept the gift or gratuity of money, as aforesaid, together with one pint of Green Label, tax paid, James Stewart brand, straight bourbon whisky, for the promise of non-performance of his duty and for protection to said Ruth Fugatt, as aforesaid, and did then and there and thereby, and in the manner and form aforesaid, and by means aforesaid, unlawfully, wilfully, corruptly, and feloniously commit the offense of bribery, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Oklahoma."

If the offense charged in the foregoing information is bribery, it is covered by section 382, Title 21 O. S. A., which is a general bribery statute, Wilkins v. State, 70 Okla. Cr. 1, 104 P. 2d 289. Section 382 reads as follows:

"Every executive, legislative, county, municipal, judicial or other public officer, or any person assuming to act as such officer, who corruptly accepts or requests a gift or gratuity, or a promise to make a gift, or a promise to do an act beneficial to such officer, or that judgment shall be given in any particular manner, or upon a particular side of any question, cause or proceeding, which is or may be by law brought before him in his official capacity, or as a consideration for any speech, work or service in connection therewith, or that in such capacity he shall make any particular nomination or appointment, shall forfeit his office, be forever disqualified to hold any public office, trust or appointment under the laws of this State,

and be punished by imprisonment in the State Penitentiary not exceeding ten years, or by fine not exceeding five thousand dollars and imprisonment in jail not exceeding one year. R. L. 1910, § 2184."

If the offense charged in the foregoing information is extortion, it is covered by section 1481, Title 21 O. S. A., which reads as follows:

"Extortion is the obtaining of property from another with his consent, induced by a wrongful use of force or fear, or under color of official right. R. L. 1910, § 2682."

To properly determine whether the information falls within the definition of bribery, as defined in section 382, Title 21 O. S. A., supra, or the definition of Extortion, as defined in section 1481, Title 21 O. S. A., supra, we must turn to common law definitions for the basic distinctions essential to the proper analysis of the charge as laid in the information. Hawkins said that:

"Bribery in a strict sense is limited to judicial officers, but in a large sense it is sometimes applied to the receiving or offering of any undue reward, by or to any person whatsoever whose ordinary profession or business relates to the administration of public justice, in order to incline him to do a thing against the known rules of honesty and integrity."

Blackstone also said that:

"Bribery is when a judge, or other persons concerned in the administration of justice, takes any undue reward to influence his behavior in his office."

Russell's definition of bribery modified Hawkins' by saying that:

"Bribery is the receiving or offering any undue reward by or to any person whatsoever, in a public office, in order to influence his behavior in office, and incline

him to act contrary to the known rules of honesty and integrity."

The definitions given by Wharton and Bishop are even broader, Wharton saying:

"Bribery is corruptly tendering or receiving a price for official action."

And Bishop defined it as:

"The voluntary giving or receiving of anything of value in corrupt payment for an official act, done or to be done."

Some courts say that:

"Bribery, at common law, is the giving or receiving anything of value, intended to influence one in the discharge of a legal duty."

For these and other definitions, see Burdick, the Law of Crimes, Vol. 1, § 288.

In 8 Am. Jur. 886, § 2, bribery is defined in general terms as the:

"Offering, giving, receiving, or soliciting anything of value with intent to influence the recipient's action as a public official whether executive, legislative, or judicial."

In this connection, section 382, Title 21 O. S. A., supra, defines corruptly receiving or soliciting a gift, gratuity, or promise to make a gift beneficial to the officer as a consideration for an act or course of conduct in the performance of his official duty, as bribery.

Likewise, in a determination as to whether the facts alleged in the information bring the case within the provisions of section 1481, Title 21 O. S. A., defining extortion induced by wrongful use of force or fear or under color of official right, we must turn to the common law for aid

in our analysis. Whatever was done in the instant case would not have been attempted except for Finley's official position. The only difficulty presented is, "Was it Bribery or Extortion?" In either, the result sought to be attained in this case would be founded upon fear of consequences if the request of the officer was not complied with. Hawkins says that Extortion:

"* * * signifies, in a large sense, any oppression under color of right; but, in a strict sense, it signifies the taking of money by any officer by color of his office, either when none at all is due; or not so much is due, or where it is not yet due."

Stephen says:

"If the illegal act consists in taking under color of office from any person any money or valuable thing which is not due from him at the time it is taken, the offense is called 'extortion'."

Bishop defines extortion as:

"The corrupt demanding or receiving, by a person in office, of a fee for services which should be rendered gratuitously; or where compensation is permissible, of a larger fee than the law justifies, or a fee not yet due." In this connection, see Burdick, the Law of Crime, Vol. 1, § 273, for these and other definitions.

At § 275, Vol. 1, Burdick says:

"At common law, the money or other thing of value must be taken under color of office. That is, the service rendered, or to be rendered, or pretended to have been rendered, must be apparently, or pretended to be, within official power or authority, and the money must be taken in such an apparent or claimed capacity."

In many cases of this nature the distinction between extortion under color of official right and requesting and receiving a bribe, by public officials, is very narrow;

so narrow sometimes as to barely cast a shadow. In fact, while bribery and extortion are distinct offenses, the same facts may be the basis for the charge of either extortion or bribery. They are very closely allied; so closely allied that if a pretense exists of official authority to do the act for which a bribe is given, the taking of it is extortion as well as bribery. Brill Cyc. Cr. Law, Vol., 2, § 1198 p. 1825. In cases of bribery, of a public officer, and extortion, under color of right, where such an interpretation as Brill makes can be logically drawn, it should be made. This should be done to the end that corruption and debauchery, in high place, would not be tolerated in civilized communities. It is the policy of this court to assume every reasonable position, tenable with the view of aiding just enforcement of the law and the maintenance of good government. To this end, we should avoid strained constructions which would enable corruption and debauchery to steal the tapers that light the sacred altars in the temple of justice.

Applying these definitions, and distinctions to the charges laid in the information, it is apparent that the issue as to whether the crime described is bribery or extortion turns on whether what the officer did was under color of official right. In this connection, what does the information allege? Does it charge the taking of money under color of any official right, by any stretch of the imagination? Do the things alleged in the information spring from the exercise of any official right? A casual reading of the information discloses no facts upon which a claim of right could be based for the acts which the officer did. The information does not charge the collection of a fee for services which should have been gratuitously rendered, the collection of a larger fee than permitted by law, or the collection of a fee not yet due. While the

information is not free from inapt expressions which tend to produce confusion, tending to give it the color of a charge of extortion, we must look to the intent and purpose of him who initiated the motivation. In this connection, the motivation had its inception with Finley, whose primary purpose was to obtain payment under an agreement to refrain from performing his official duties. The conditions of the agreement certainly cannot be held to partake of any of the elements as defined in section 1481, Title 21 O. S. A. supra. The money paid was certainly not paid with consent of Ruth Fugatt, which, under the statute, must necessarily be paid by consent to make a case of extortion. The money paid in this case was paid under specific direction of the county attorney's office. Ruth Fugatt did not consent to the payment. She did not intend to consent; hence, her reason for going to the county attorney with the case. The payment was made under specific direction of the officers of the law by way of consummating the crime, the initial motivation for which had been instituted and commenced by the defendant himself. The conditions of the agreement certainly cannot be held to partake of any of the elements of color of official right as set forth in the definitions, supra. Not even the defendant would say what was alleged to have been done could have been under color of official right.

Excluding some poorly selected terms chosen by the prosecutor in preparing the charge, such as "ultimatum" and "demand", and confining the analysis to the facts alleged, there is no basis for the contention of extortion by a public officer. It is therefore our opinion that the facts alleged in the information do not fall within the definition of extortion as defined in section 1481, Title 21 O. S. A., supra. On the contrary, the information charges that George Finley, a duly qualified officer of the law, a

constable, corruptly requested a bribe in the sum of forty dollars ($40), in advance, one pint of Green Label whisky per week and ten dollars ($10) per week, which when paid, would influence him in his behavior in the performance of his official duty to the end that he would refrain from raiding Ruth Fugatt, the bootlegger. It further alleges that Ruth Fugatt then informed the county attorney of the request for a bribe. She was thereupon directed to consummate the corrupt request within its terms. She was provided with marked money, which she paid to the defendant, together with the marked pint of whisky, in consummation of the crime. It alleges the money was accepted by the defendant and he proceeded to carry out the terms of the agreement by even going so far as to warn her of the raiding activities of officers other than himself.

In this case, stripping the information of the illy chosen phrases such as "ultimatum" and "demand" and looking at the charge from the standpoint of essential allegations, the bare facts, and the intent and purpose, we are forced to conclude that the information charges an invitation to pay and the payment of a bribe to the officer to influence him in his official behavior in the performance of his official duty to the end of a perversion of justice which the provisions of the Oklahoma Statutes define as Bribery, § 382 Title 21 O. S. A.; Wilkins v. State, 70 Okla. Cr. 1, 104 P. 2d 289. Therefore, the court did not err in overruling the defendant's demurrer to the information.

The second proposition of the defendant is that:

"The court erred in denying defendant the right to examine jurors."

More specifically, the defendant sought in the voir dire examination to have marked as exhibits, photographs of certain criminal and questionable characters for exhibit to the jurors. The said photographs were to be exhibited to the jurors to determine whether any of them were acquainted with any of the persons whose photographs were thus exhibited and whom it was known, or believed, would be witnesses for the state. All the photographs thus sought to be used were obviously taken from the files of some bureau of criminal identification. The defendant contends his object in so using the photographs was as a basis for peremptory challenges to those jurors who bore an acquaintance with said characters. The effect of the use of such pictures could not have been limited to those jurors eliminated from the jury by peremptory challenge. The implications left in the minds of the jurors not challenged would be impossible to evaluate. To have permitted such an examination under these conditions would have been most prejudicial to the rights of the state, which the court has sworn to protect as well as the rights of the defendant. The defendant cites no authority in support of this contention. We have made a diligent effort to find some basis for such a procedure but find no possible basis in the law for such an examination. This contention is therefore wholly without merit.

The third proposition is that the court erred in excluding evidence offered by the defense, and in refusing the right of cross-examination. In this connection, it is complained that the court would not permit cross-examination of the state's chief witness, Ruth Fugatt, as to the liquor she bought and sold, and from whom it was purchased. We can see no relevancy to such an inquiry, to

the issue of bribery herein involved. Therefore, this contention is wholly without merit.

The fourth proposition is that:

"The state's witnesses were accomplices and that the defendant could not have been convicted on their uncorroborated testimony and that neither one could corroborate the other."

The defendant relies on Title 21 O. S. A., § 391:

"In all cases wherein the offering, giving or receiving bribes is made criminal by the provisions of the penal code, the party to such crime who shall first furnish information in relation thereto, as against the other parties, and in any prosecution therefor, shall testify to the same truthfully and fully, shall not thereafter be criminally liable therefor, but in such case no conviction shall be had on the uncorroborated testimony of one such witness. R. L. 1910, § 2193."

And, on Title 22 O. S. A. § 742:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof. R. L. 1910, § 5884."

And, the following cases: Capshaw v. State, 69 Okla. Cr. 440, 104 P. 2d 282; Wilkins v. State, 70 Okla. Cr. 1, 104 P. 2d 289; Spivey v. State, 69 Okla. Cr. 397, 104 P. 2d 263; McNack v. State, 62 Okla. Cr. 285, 71 P. 2d 317.

The foregoing statutes and cases are not in point for the reason that the defendant had no accomplices. The statutes, relied on by the defendant, are statutes specifically applicable to cases involving accomplices. The cases relied upon by the defendant are cases where the proof

was clear as to the relationship of the accomplices. Here, no such situation exists. The principal reason that Ruth Fugatt cannot be regarded as an accomplice is because of the lack of criminal intent. From the moment she was first approached, about entering into the corrupt agreement proposed by the defendant, she said she would not pay anything for protection. Instead of entering into the agreement, she immediately reported the defendant's request for the bribe to the county attorney. Plans were then made by the county attorney for the defendant to consummate the intended crime through Ruth Fugatt, all as alleged in the information. On no theory of the law could Ruth Fugatt, under these circumstances, be held to have intended to commit a criminal offense, and, being without criminal intent, she could not be prosecuted under the facts herein developed. The true test of whether Ruth Fugatt was an accomplice is whether she could be charged and punished for the crime with which the defendant is charged, or whether her participation in the offense was criminally corrupt. 16 C. J. 671, note 71 and 72, 22 C. J. S., Criminal Law, § 786; Mayes v. State, 11 Okla. Cr. 61, 142 P. 1049; People v. Coffey, 161 Cal. 433, 119 P. 901, 39 L. R. A., N. S., 704, wherein the court said:

"The test of whether one is an accomplice, within the rule as to accomplice's testimony, is whether his participation in the offense has been criminally corrupt."

As a criminal intent is the essence of all criminal liability, one who, though he may be a participant in the actual commission of a crime, acted without any criminal intent, cannot be regarded as an accomplice. This rule of law has been followed in Hendrix v. State, 8 Okla. Cr. 530, at page 532, 129 P. 78, at page 79, 43 L. R. A., N. S., 546, wherein Judge Doyle, former member of this court, speaking for the court said:

"We think the term 'accomplice', as used in section 6836, must be considered as meaning one culpably implicated in the commission of the crime of which the defendant is accused; that is, an associate, one who knowingly and voluntarily co-operates or aids or assists in the commission of the crime."

An accomplice is defined in Jones Commentaries on Evidence, vol. 5, § 2216, p. 4231, as "One who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of a crime." It is apparent that Ruth Fugatt did not do what she did in this case of her own volition, nor did she do it with a common intent with the principal offender. Finley's intent was to request and receive a bribe. Fugatt's intent, after being requested to pay a bribe, was that of an informer, acting under the direction of the county attorney, in order to catch him who had requested the bribe of her.

There is a wide distinction between the part played by Ruth Fugatt and the part played by the defendant. Jones says:

"Persons who, when a crime has been suggested, and who make an early disclosure of the offense to the authorities, and, under their direction continue to act with the guilty party, but for the purpose of bringing them to justice, are not accomplices in the sense that their testimony requires corroboration." Jones, Commentaries on Evidence, Vol. 5, § 2218, pp. 4235, 4236, note 7.

It is apparent then that Ruth Fugatt was not an accomplice in the ordinary sense. How, then, does the law define her role?

In 14 Am. Jur. Criminal Law, § 113, p. 843, the rule is stated as follows:

"Since criminal intent is essential to render one an accomplice, it follows that a feigned accomplice is not

within the rule that the uncorroborated testimony of an accomplice will not support a conviction. Thus, a detective who, for the purpose of discovering crime, ostensibly aids in its commission or in a conspiracy to commit it, or is a 'spotter' or paid informer, or the purchaser of liquor, unlawfully sold for the purpose of detecting the seller, or one buying a lottery ticket for the purpose of detecting and punishing the vendor, where the sale is prohibited, or one who, not knowing of a larceny until after it has been committed, purchases the stolen goods under the direction of an officer with money furnished by the latter, with a view to detect the thief is not an accomplice whose testimony must be corroborated."

Black's L. D. (3rd Ed.) defines feigned accomplice as follows:

"One who pretends to consult and act with others in the planning or commission of a crime, but only for the purpose of discovering their plans and confederates and securing evidence against them."

In Sowells v. State, 99 Tex. Cr. R. 465, 270 S. W. 558, it was held that:

A feigned accomplice must be distinguished from other accomplices by reason of lack of criminal intent.

In People v. Grijalva, 48 Cal. A. 2d 690, 121 P. 2d 32, at page 34, the California Appellate Court said:

"One 'who feigns complicity in the commission of a crime merely for the purpose of detecting and prosecuting the perpetrators is not an accomplice.' 8 Cal. Jur. 175; People v. Fitzgerald, 14 Cal. App. 2d 180, 199, 58 P. 2d 718."

In State v. Verganadis, 50 Nev. 1, 248 P. 900, the Nevada Supreme Court said, in syllabus (5) and (8):

"(5) Testimony of a feigned accomplice does not require corroboration."

"(8) 'Accomplice' is one who knowingly, voluntarily, and with common intent with principal offender unites in commission of crime, but one who co-operates with view of aiding justice to detect crime is a 'feigned accomplice'."

See, also, People v. Ferrell, 30 Cal. 316; People v. Barric, 49 Cal. 342; State v. Brownlee, 84 Iowa, 473, 51 N. W. 25.

This court has given assent to the doctrine of "feigned accomplice' without designating it as such, in Filler v. State, 23 Okla. Cr. 282, 214 P. 568, in the 3rd syllabus, as follows:

"Where there is evidence indicating that a witness is, or may have been, an accomplice, and other evidence indicates that he was not criminally implicated, but acted as an informer, evidence by third persons of what was said by the witness in relation to the different steps taken to take and haul away the property may be admissible to determine whether or not the witness was in fact an accomplice requiring corroboration."

In 14 Am. Jur. 843, § 113, note 10, we find, however, in relation to feigned accomplice, that "evidence coming from such a contaminated source must be closely scrutinized by the jury; but if they are satisfied with its truth, they may base a conviction on it." It has been held, however, that a witness is not to be discredited from the simple fact that he may fill the character of an informer or spy; The President and Trustees of The Town of St. Charles v. O'Mailey, 18 Ill. 407. The jury was sufficiently impressed in the case at bar with the truthfulness of Ruth Fugatt's testimony as well as the testimony of the other state's witnesses as to believe it. Their testimony, as we have hereinbefore said, was corroborated in many of the essential details of the case, such as, by the payment of the

money and the receipt of the whisky. We believe that the record is conclusive that Ruth Fugatt's role in the case at bar was that of a feigned accomplice. The part she played was not criminally corrupt. It was the role of informer of the defendant's intended crime. She was a party to the plan through which the defendant was enabled to consummate the crime which he originated. In no sense of the word was she an accomplice whose testimony required corroboration. Being a feigned accomplice, Ruth Fugatt's testimony standing alone, if believed, would have been sufficient upon which to base a conviction. This and other evidence offered by the state, the jury believed and this court has repeatedly held that it is the province of the jury to weigh and determine the facts; Chapman v. State, 84 Okla. Cr. 41, 178 P. 2d 638.

The defendant's fifth proposition is:

"That under the state's own evidence, George Finley was entrapped and the conviction must therefore be reversed."

The defendant cites the following cases in support of this contention: Shouquette v. State, 25 Okla. Cr. 169, 219 P. 727; Stanley v. State, 25 Okla. Cr. 195, 219 P. 734; Roberts v. Territory, 8 Okla. Cr. 326, 57 P. 840; Rider v. State, 53 Okla. Cr. 393, 12 P. 2d 552; Wooten v. State, 70 Okla. Cr. 292, 106 P. 2d 132. None of these cases is in point as applied to the facts in this case. Therein, the distinction is clearly drawn that, "It is not against public policy for * * * officers to set a trap for *one suspected of planning the commission of a crime,* and if he commits the crime, even though aided or encouraged by the officers * * * who laid the trap, the fact that he was so entrapped will be no defense." Shouquette v. State, supra, one of the cases relied on by the defendant. The case at bar falls

clearly within that rule. Here, the jury believed the request for the payment of the bribe originated with the defendant which Ruth Fugatt reported to the county attorney, who then used her as a decoy, that Finley might consummate the proposed crime. This court has held that a decoy may be used to detect a criminal, by giving him an opportunity to commit the intended offense, and the decoy may be present and apparently assist in its commission and such conduct on the part of the decoy is no defense. For this rule to apply, however, the suggestion of the criminal act must originate with the defendant. If the decoy suggests or initiates or induces the commission of the crime, or artificially propagates the crime or lures an otherwise innocent person to commit the crime and the decoy performs an act essential to the crime, a conviction cannot be had on such a basis for that is entrapment. Lee v. State, 66 Okla. Cr. 399, 92 P. 2d 621, wherein Judge Doyle, former member of this court said in syllabus parags. (4), (5), and (6):

"(4) Where the doing of a particular act is a crime regardless of the consent of any one, if the criminal intent originates in the mind of the defendant, the fact that peace officers furnish an opportunity for or aid in the commission of the crime, in order to secure the evidence necessary to prosecute him therefor, constitutes no defense.

"(5) Entrapment is the planning of an offense by an officer, and his procurement by improper inducement of its commission by one who would not have perpetrated it, except for the trickery or fraud of the officer.

"(6) Ordinarily, it is not against public policy for peace officers or persons acting under their direction to set a trap for one suspected of planning the commission of a crime, and if he commits the crime, even though encouraged by the officers or persons acting under their

direction who laid the trap, the fact that he was so entrapped will be no defense."

We have already indicated that the record herein supports the conclusion that the suggestion of a bribe originated with Finley. This fact was testified to, not only by Ruth Fugatt, but also by Jack Corbin, and Maxine Hazlitt. In light of the foregoing principles of law and the record, the defendant's contention of entrapment is without merit.

The defendant's sixth proposition is:

"The court committed fatal error in refusing the defendant's instructions on both the question of the corroboration of accomplices and the question of entrapment and in refusing to give any instructions whatsoever on these questions."

This contention is based upon the court's refusal to give six requested instructions. Instruction No. 1 is based upon the theory of entrapment and instructions Nos. 2, 3, 4, 5, and 6 are based upon the theory of accomplice. It is not necessary to set forth the requested instructions for determination of this issue. It is sufficient to say that these issues are resolved in light of what we have said heretofore concerning entrapment and accomplice. The case did not present one of entrapment, since the motivation for the commission of the crime originated with the defendant. Nor did it present one where the witness Ruth Fugatt was an accomplice in the sense that her testimony required corroboration. The evidence as presented by this record does not make a case upon which the theory of either entrapment or accomplice could be predicated. This being true, the court properly refused the requested instructions. Dyer v. State, 58 Okla. Cr. 345, 53 P. 2d 700, wherein this court said:

"The instructions in all cases should be applicable to the facts and to all proper deductions and interpretations of them and not to questions not presented or covered by the evidence."

Mead v. State, 65 Okla. Cr. 86, 83 P. 2d 404; Oglesby v. State, 56 Okla. Cr. 286, 38 P. 2d 32, wherein this court said:

"A defendant is not entitled to an instruction on an issue not raised by the evidence."

In State v. Dubois, 98 Utah, 234, 98 P. 2d 354:

"A party is entitled to have the jury instructed on the law governing the issues according to his theory, providing such theory is tenable as a matter of law, or finds possible support in evidence."

He is not entitled to complain because the court failed to give his requested instructions, "if such statement of law is outside the issues to be determined by the jury," or not within the evidence, "even though the requested instruction did state a rule academically sound;" Since the evidence did not support either the theory of entrapment or accomplice, the court correctly refused the requested instructions and this proposition is likewise without merit.

The defendant's seventh and last contention is:

"That the prosecuting attorney was guilty of improper and prejudicial argument."

This proposition is based upon the following excerpt from the record:

"Mr. Miskovsky: * * * 'And it was either the grand jury or to file a complaint before the county commissioners in order to remove this man from office, who under the evidence unequivocally took bribes from bootleggers * * *. Mr. Eberle: Just a moment. Mr. Miskovsky: From

this bottlegger. Mr. Eberle: We object to the statement of counsel. He knows it is false and untrue. Mr. Miskovsky: No, I don't. Mr. Eberle: He has made that statement before the county commissioners and was challenged, and it is false and untrue, and I am going to ask for a mistrial at this time. The Court: The request for mistrial will be denied. Mr. Eberle: To which we except and we will ask that the jury be instructed as to the statement of the county attorney as not being evidence in this case. The Court: The jury will consider the evidence as they heard it from the witness stand and are to arrive at a verdict on their deduction of what the evidence is to them.'"

It is contended that "by this statement the county attorney attempted to pervert the record and evidence and to mislead the jury into thinking that the defendant received other bribes from other bootleggers * * *."

While it is true that the statement of the county attorney to the effect that defendant unequivocally took bribes from bootleggers was not warranted by the record, we do not believe it constitutes grounds for reversible error. We are of the opinion that the statement standing alone, when construed in view of the county attorney's immediate correction and the court's instructions to the jury, could not be calculated to deprive the defendant of any substantial rights or such as would arouse passion and prejudice of the jury and sway them in arriving at a just verdict. Gregg v. State, 69 Okla. Cr. 103, 101 P. 2d 289; Brown v. State, 52 Okla. Cr. 307, 4 P. 2d 129; Carmichael v. State, 44 Okla. Cr. 160, 279 P. 515. This contention affords no basis for a reversal of the case.

We find no material error has been committed and the judgment in this case is accordingly affirmed.

BAREFOOT, P. J., and JONES, J., concur.