403 P.2d 289

STATE of Arizona, Appellee,

v.

Manuel Cota MORAGA, Appellant.

No. 1495.

Supreme Court of Arizona.

In Division.

June 17, 1965.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, Former Atty. Gen., Norman E. Green, Pima County Atty., Carl Waag, Deputy Pima County Atty., William T. Healy, Deputy Pima County Atty., for appellee.

Jack I. Podret, Ted Pedersen, Tucson, for appellant.

McFARLAND, Justice.

Appellant, hereinafter referred to as defendant, was convicted and sentenced to a term of not less than thirteen nor more than fifteen years on each of two counts (to run concurrently) for the unlawful sale of narcotic drug (heroin) in violation of A.R.S. § 36–1002.02, as amended. From the conviction, sentence, and the denial of his motion for a new trial, he appeals.

On October 8, 1963, about seven o'clock in the evening, Henry Lugo, who had been hired as an informer by Edmund C. Cleveland, an agent for the Department of Liquor Licenses and Control, went to Room 124 in the State Office Building in Tucson, where his clothing and his person were searched by Cleveland, and, then, in the parking lot his automobile was searched. Leonard B. Hymer, another agent of the Department, and William Dunn of the Tucson Police Department who worked in the vice and narcotics division, assisted in the search. Cleveland then gave Lugo five dollars to make a purchase of narcotics.

Lugo then drove off in his car, followed by Cleveland, Hymer, and Dunn. They followed him to where Lugo met defendant at the intersection of 17th Street and Convent. Lugo parked his car some twenty feet north of 17th Street on Convent. Defendant came into view, and Lugo followed him. They walked up and met, the time being about 7:30 p. m. Cleveland, Hymer, and Dunn testified that they watched them through night glasses—that it looked like they were shaking hands. Lugo testified that he gave defendant five dollars and that he was handed a packet which he kept in his hand until he returned to the state office building, where he gave it to Cleveland. The packet was later examined by Clifton V. Ark, a chemist for the Tucson Police Department, and was found to contain heroin.

On the 19th of October the same procedure was followed, except that Dunn did not observe the transaction, but was in the office when the others returned. Cleveland testified that the money was given to Lugo for the purchase of the evidence. The paper was likewise examined and found to contain heroin.

Defendant took the stand at the trial, denied the transaction, and claimed an

alibi—that on the evening of October 8th he was at home at the time of the alleged sale. His testimony was corroborated by his wife, Mary Moraga. He also denied the sale on the evening of the 19th, and claimed he was at a Bingo game. This testimony was corroborated by Armida Maldonado and Rose Moraga, defendant's mother.

Defendant contends that the background and character of Lugo were such that the testimony should have been rejected by the trial court, or, in the alternative, Lugo should have been treated as an accomplice and the court should have required corroboration of his testimony. He bases this contention on the evidence that Lugo was an informer and a user of narcotics. At the trial, on cross-examination, counsel for defendant had Lugo point out a series of "track marks." Lugo also admitted to defense counsel that he received a bonus of fifty dollars for each person he informed against; and that he had been convicted of a felony—grand theft—in 1962.

We have held that in reviewing the sufficiency of evidence this court will view it in the light most favorable to the state and will resolve all reasonable inferences against defendant. State of Ariz. v. Pearson, 98 Ariz. 133, 402 P.2d 557 (June 3, 1965); State v. Corrales, 95 Ariz. 401, 391 P.2d 563; State v. George, 95 Ariz. 366, 390 P.2d 899. In the Pearson case, supra, where the facts were similar to those of the instant case, and Lugo was likewise the principal witness, we held:

"The evidence directed toward the impeachment of Lugo's character affects only his credibility as a witness and not the admissibility of his testimony. If the evidence was sufficient to warrant submission to the jury, it is not for judges to weigh the evidence or to determine the credibility of witnesses, United States v. Kahaner, 2 Cir., 317 F.2d 459." 98 Ariz. at 135, 402 P.2d at 559.

The contention of defendant in the instant case that Lugo should be treated as an accomplice and that the court should have required corroboration of his testimony is not well founded. The general rule in regard to informers being treated as accomplices is stated in 23 C.J.S. Criminal Law § 788, p. 11:

"A detective or police officer engaged in attempts to discover violations of law does not thereby become an accomplice of persons charged with specific violations; nor are informers, 'spotters,' and the like, regarded as accomplices of persons against whom information is given."

In Johnson v. State, 36 Ala.App. 634, 61 So.2d 867 (1952), the defendant had previously offered to sell marijuana to the witness, and he thereafter, acting with the knowledge and the planning of the police

officers, had gone to the home of the defendant and made purchase of marijuana cigarettes. The court, in passing upon the question of his being an accomplice, held:

"However, this witness, under the undisputed proof, was not an accomplice within the contemplation of the law. His acts were not motivated by any criminal intent to violate the law. His participation was not criminally corrupt.

"The following authorities sustain our view: 22 C.J.S., Criminal Law, § 788, p. 1340; Lett v. U. S., 8 Cir., 15 F.2d 690; Gonzales v. State, 108 Tex.Cr.R. 253, 299 S.W. 901; People v. Kinsley, 118 Cal.App. 593, 5 P.2d 938; People v. Abair, 102 Cal.App.2d 765, 228 P.2d 336; People v. Mimms, 110 Cal.App.2d 310, 242 P.2d 331; People v. Grijalva, supra [48 Cal.App.2d 690, 121 P.2d 32]; Finley v. State, 84 Okl.Cr. 309, 181 P.2d 849." 61 So.2d at 869.

In Finley v. State, 84 Okl.Cr. 309, 181 P.2d 849 (1947), the court said:

" * * * Fugatt's intent, after being requested to pay a bribe, was that of an informer, acting under the direction of the county attorney, in order to catch him who had requested the bribe of her.

"There is a wide distinction between the part played by Ruth Fugatt and the part played by the defendant. Jones

says, 'Persons who, when a crime has been suggested, and who make an early disclosure of the offense to the authorities, and, under their direction continue to act with the guilty party, but for the purpose of bringing them to justice, are not accomplices in the sense that their testimony requires corroboration.' Jones, Commentaries on Evidence, Vol. 5, § 2218, p. 4235, 4236, note 7." 181 P.2d at 859.

The law is clear that testimony of an informer does not have to be corroborated. However, Lugo's testimony was corroborated in the instant case. The evidence is sufficient, where corroboration is required, if it tends to connect defendant with the crime. State v. Turner, 94 Ariz. 309, 383 P.2d 866. Certainly the evidence of the officers in this case was sufficient to connect defendant with the crime. They had previously searched Lugo—his clothes, his person, and his automobile. They watched him through night glasses on both occasions, and, although unable to see the actual transfer, they saw him meet defendant, after which he returned to the state office building with the evidence.

Defendant's alibi testimony that he never saw Lugo at the times of the sales was contradicted by the evidence of the state. The jury heard both defendant's and the state's witnesses, and evidently did not believe defendant's alibi. While defendant

contends Lugo's testimony should not be termed as persuasive this was a question properly submitted to the jury, and the jury believed the officers and believed that defendant had made the sales for which he was charged. The contentions of the defendant are not well founded.

Defendant states that he did not receive a fair and impartial trial because of the examination of a juror, one of the jurors having stated that he had sat on a jury in a recent narcotics case and that the jury had found defendant in that case guilty but the court had directed a new trial. Defense attorney then requested permission to take up a legal matter, and, in the absence of the jury, defense attorney made a motion for a mistrial. He based his motion upon the grounds that the court had established that Lugo, who was a witness in this case, was also a witness in a previous narcotics case on which the juror served, and in which a guilty verdict had been returned. Defense counsel stated that for this reason the panel was so prejudiced it could not render a fair verdict in the instant case. After discussion in chambers, the record shows the following proceedings:

"THE COURT: Let the record show that these jurors, Sharp, Smith and Howe are the only jurors appearing on previous narcotic cases and it appears to the Court that the witness Henry Lugo, Jr. is probably one of the witnesses in those cases, and the Court

upon going back into the Courtroom will, on the Court's own motion, discharge said jurors for cause without objection on the part of defense counsel.

"What about you? Do you want an objection in the record?

"MR. HEALY: Yes, I will have to object to it.

"THE COURT: Over the objection of the State, and the Court will strongly admonish the jury to disregard any previous questions with regard to any narcotics cases, and based upon this, the motion for mistrial is denied. "Is there anything further?

"MR. PEDERSEN: Withdrawn.

"THE COURT: The record may show that the defendant, upon the Court's own motion, withdraws the defense motion for mistrial.

\*　　\*　　\*　　\*　　\*　　\*

"(In Court.)

"THE COURT: The record may show that we are back in the Courtroom, the defendant is present, the jurors in the box are present and seated.

"Ladies and Gentlemen, upon the Court's own motion, for reasons which you are not to speculate upon, the following jurors will be excused from the box of thirty-two and directed to be seated in the back of the Courtroom;

the jurors are Sharp, Smith and Howe, and the Clerk will call the names of three additional jurors.

"(Three additional jurors called.)

"THE COURT: Now Ladies and Gentlemen of the Jury, the Court directly admonishes you and instructs you to disregard any questions previously asked about narcotics trials and to place same out of your mind and give them no consideration whatsoever."

 It will be noted that the attorney for defendant withdrew his motion for a mistrial, and thereby waived his objection to the proceedings. Even if he had not waived the motion, there is nothing in the record to show that defendant was in any way prejudiced by what occurred in the courtroom, particularly in view of the admonition of the court to disregard any questions previously asked about narcotics trials and that they should place the same out of their minds and give them no consideration whatsoever.

The decision as to whether a juror or jurors are disqualified in a particular case rests in the sound discretion of the trial court, based upon the evidence. State v. Brady, 66 Ariz. 365, 189 P.2d 198; Riley v. State, 50 Ariz. 442, 73 P.2d 96; Burnett v. State, 34 Ariz. 129, 268 P. 611. The court, in the instant case, did not abuse this discretion. We do not pass upon the question of whether the jurors who had served on the previous panel would have been eligible to serve as jurors in the instant case, as all were excused.

Finding no prejudicial error, the judgment of the court below is affirmed.

BERNSTEIN and UDALL, JJ., concurring.