# DOOLIN v. STATE.

No. A-11031.   Nov. 23, 1949.

(212 P. 2d 136.)

Wallace & Collins, Sapulpa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, J.  The defendant, Raymond Doolin, was charged by information filed in the superior court of Creek county with the crime of unlawful sale of intoxicating liquor, was tried before a jury, convicted and sentenced to serve a term of 30 days in the county jail and to pay a fine of $100, and has appealed.

For a reversal of this case, three assignments of error are presented: (1) Court's refusal to sustain defendant's motion for mistrial after an independent and highly prejudicial exhibit had been offered as evidence and displayed to the jury, together with testimony alluding to its relation with defendant; (2) failure of the court to include in his instructions to the jurors an instruction directing them not to consider the incompetent and highly prejudicial exhibit submitted and openly displayed before the jury by the county attorney and prosecuting witnesses; and (3) error of the court in not sustaining defendant's motion for mistrial because of the improper and prejudicial remarks outside the record made by the assistant county attorney in the closing argument of said cause, to which defendant objected and the court refused to admonish the jury not to consider the same.

No contention is made as to the sufficiency of the evidence to sustain the verdict of guilty.

The information charged that on or about July 16, 1947, the defendant sold and delivered to O. W. Webb one pint of "Old Grand-Dad" whisky.  The proof on

the part of the state showed that O. W. Webb was a minister of the gospel, formerly of Bristow, then residing in Tulsa, but currently conducting a revival meeting at Drumright; that on the 16th day of July, 1947, and at about 10:30 in the evening, after services at Drumright, and accompanied by Rev. Homer Gaines, Rev. Webb entered the Oilton Bar at Oilton, operated by Raymond Doolin, the defendant, and found defendant and three other men sitting in a booth playing cards; that he had conversation with defendant. The witness stated:

"I walked in and asked him if he had any Grand-Dad whisky, and he said 'yes', and I said 'Have you got a pint?' and he said 'yes' and he got out of the booth and walked back to his bar and stepped in a little anteroom and came out with this pint of whisky here."

A pint of Old Grand-Dad whisky was in view of the jury and the same was marked "State's Exhibit A" and the county attorney handed the same to Rev. Webb to be identified, the witness stating that he paid the defendant $5 for the whisky, and that he wrote the date and time of purchase on the label at the time of purchase, but when witness went to read the identification he stated that he had the wrong pint, and that Rev. Gaines, who was another state witness and who was just outside the courtroom, had the pint purchased from defendant, and the county attorney asked him if he wanted to withdraw the bottle in question and offer the right bottle, and he answered:

"Yes, sir, it is an error. This bottle of Old Grand-Dad whisky was purchased at a different place, and to be sure I wrote on it. Mr. Gaines is standing outside. He has one and I have the other."

The county attorney further asked the witness: "And you don't want to identify this defendant with the sale

of this whisky in any way, shape or form or fashion?  A. That is right." The witness was permitted to step outside the courtroom and obtain a second bottle of Old Grand-Dad whisky whch he identifed from marks thereon as being the pint purchased from the defendant.

Rev. Homer Gaines testified that he accompanied Rev. Webb to the Oilton Bar and witnessed him purchase a pint of Old Grand-Dad whisky from the defendant, substantially corroborating the testimony of Rev. Webb in all particulars.  At the commencement of his testimony counsel for defendant objected to the first pint of Old Grand-Dad whisky being kept in view of the jury and the county attorney agreed to and did then conceal it. Counsel for defendant sought a mistrial, but this was denied.  Witness stated that right after the purchase Rev. Webb wrote "Oilton Bar" and the date on the bottle of whisky purchased from the defendant.  The state rested, and the defendant moved that the case be dismissd and the motion was overruled, and the court stated:

"The court will deny the motion to dismiss the charge, but wishes to state to the jury in connection with the bottle of whisky that was first exhibited to the jury through error, that the jury should not consider any fact in relation to that first bottle of whisky exhibited through error.  The defendant in this case is only charged with the sale of one pint of whisky and the jury should not be prejudiced against the defendant because of the bottle of whisky which was exhibited to you that was not purchased from this defendant—it is admitted by the witnesses that the first bottle of whisky exhibited was not purchased from this defendant."

The defendant used three witnesses besides himself. He testified that he was born near Oilton and had lived in Oilton since 1936; that he had never been convicted of crime in Oklahoma; that he remembered Rev. Webb

coming to his place of business, defendant testifying: "He came in; I got up from a booth and walked over behind the bar and he asked me for a pint of whisky, and I told him I didn't sell it.

"Q. What did he do? A. He stood there a minute and turned around and walked out. Q. Was there anyone with him? A. Yes, sir. Q. Did you know that man? A. No, sir."

Defendant further testified that he was playing pitch when Rev. Webb came in; that he ran a beer parlor and had pitch games going on there at the same time, and that he had never seen the whisky introduced in evidence, until it was introduced.

Orb Hulsey testified for the defendant, stating that he was playing pitch with him and a man by the name of Ramsey and one by the name of Scott; that he saw Rev. Webb when he came in defendant's place, did not know him, but that defendant told him who Rev. Webb was after he left; that someone was with Rev. Webb; that witness did not see the defendant sell Rev. Webb any whisky; that he did not hear the conversation between defendant and Rev. Webb, and that the parties were in plain view of him.

Ed Haney was used by defendant as a character witness, testifying that he was acquainted with defendant's reputation in the community in which he lived for being a peaceable and law-abiding citizen and that his reputation was good. Witness on cross-examination could not testify as to the defendant's reputation for operating a place where whisky was sold.

F. E. Pope was used by defendant as a character witness, testifying that he had known defendant 15 or 20 years and that he had a reputation in the community as

being a peaceable and law-abiding citizen. On cross-examination, among others, the following questions were asked and answers given:

"Q. You have lived there and you know him and you know his place of business? A. Yes, sir. I was in business there eight or ten years. Q. Have you ever heard they sold liquor there? A. I might have heard it, but I don't know who told me. I don't know a thing about it. Q. You wouldn't say the reputation of his place is not that it is a place where liquor is sold, would you? A. I wouldn't qualify to say yes or no. I don't personally know it. Q. But you have heard that he did sell liquor there, have you not? A. I don't know that I ever heard that. I possibly did. Q. You might have heard that? A. I don't know. Q. That is all."

The defendant rested, and thereafter the court read his instructions to the jury. And it is our opinion that the court fully instructed the jury on every material question of law applicable in this case. Neither the defendant nor the state offered any instructions or excepted to the instructions given.

In his opening statement to the jury and by several motions for mistrial, counsel for defendant emphasized the mistake the state made in producing a bottle of Grand-Dad whisky that it developed on reading of the identification label was not purchased from the defendant, and which was not introduced in evidence. He now argues in effect that because of the first bottle of whisky exhibited remaining for a considerable time on the reporter's desk in plain view of the jury, the rights of the defendant were materially prejudiced. The case of Nichols v. State, 76 Okla. Cr. 178, 135 P. 2d 352, 354, is cited by defendant as a leading case on the subject, but it is sought to distinguish that case from the present one. In that case the defendant, Pete Nichols, was tried and con-

victed in the county court of Muskogee county on a charge of unlawful possession of intoxicating liquor. In the trial of the case the county attorney introduced in evidence the affidavit for the search warrant and also the search warrant. Before the instruments were read or presented to the jury, the county attorney was granted leave to withdraw the two exhibits, and the court instructed the jury to disregard the exhibits and not to consider them as evidence in the case. The court said:

"It is revealed by this statement and also by the record that these exhibits had only been offered in evidence, and had not been read to the jury, and the jury was instructed by the court not to in any way consider them. From an examination of the record as a whole, we do not see that there was any error in permitting the withdrawal of the exhibits. The defendant was in no way prejudiced thereby. He had a fair and impartial trial."

Of course, this court has a number of times held that it is fundamental error to admit in evidence the affidavit for search warrant and search warrant. See Savalier v. State, 85 Okla. Cr. 87, 185 P. 2d 476, for reasons given. Defendant points out that in the Nichols case the jury did not get to read the instruments erroneously offered, whereas in the present case they observed the extra pint of whisky, and that even though the court admonished the jury not to consider such pint, that nevertheless the mere sight of this extra pint influenced the jury in its verdict. In the Nichols case the jury saw the affidavit and search warrant, knew what the instruments were, but not the contents. The jurors may have had some curiosity. Here they saw the pint, but the defendant was connected with only the second pint, and was charged with possession and sale of but one pint. The court so admonished and instructed the jury in instructions 1 and 5. And from a

reading of the entire record we fail to see where the mistake of handing the witness an identical pint of whisky which proved on inspection by witness of identifying words on label to be the wrong bottle, and same not being offered in evidence, could have prejudiced defendant's substantial rights. That is the very purpose of foundation evidence as a basis for offering an exhibit in evidence. The correct pint was immediately offered in evidence and the mistake was obviously an honest mistake.

The defendant next contends that the court, though not requested, should have given the jury a written instruction not to consider the first pint of whisky exhibited as being involved in this case. He contends the verbal instruction was insufficient. If he, so thought, it was his duty to have submitted a requested instruction. In Green v. State, 70 Okla. Cr. 228, 105 P. 2d 795, this court held:

"If upon the trial additional instructions are desired, it is the duty of counsel to reduce them to writing and request that they be given, and if he fails to do so a conviction will not be reversed, unless the court is of the opinion, in the light of the entire record and instructions of the court, that there was a failure to instruct the jury upon some material question of law, and that the defendant has been deprived of a substantial right.

"If upon the trial special instructions are desired by the defendant, he is required by the provisions of our Code of Criminal Procedure to present in writing to the court the instructions desired, and it is not error for the trial court to omit to instruct upon every possible question under the defendant's theory of the case, where he has not requested such instructions."

The assistant county attorney in his argument to the jury attempted to apologize for his mistake in producing the wrong bottle of Old Grand-Dad whisky and he

emphasized that only one pint was purchased from the defendant. It was stipulated that the remarks complained of were in substance, as follows:

"Gentlemen: I apologize to you for the mistake made by us in producing at the trial the wrong bottle of whisky, the one that was withdrawn. It was a mistake on our part and we hope you will dismiss it from your minds as that bottle of whisky had no connection with this defendant."

The argument of counsel for defendant does not appear consistent, and at all events we do not consider that such remarks prejudicially affected the rights of the defendant. Further, the cases of Hamilton v. State, 79 Okla. Cr. 124, 152 P. 2d 291, Walkup v. State, 89 Okla. Cr. 39, 205 P. 2d 332, and the other cases cited by defendant as sustaining his contention are not, in our opinion, in point when applied to the facts in the within case.

See Workman v. State, 83 Okla. Cr. 245, 175 P. 2d 381, 382, and the cases cited therein, in which this court said:

"A conviction will not be reversed because of argument of county attorney to jury, unless such argument, in view of the entire record, affected defendant's substantial rights, or caused bias or prejudice against him in the minds of the jurors."

For the reasons above stated, the judgment of the superior court of Creek county is affirmed.

JONES, P. J., and BRETT, J., concur.