# BALLARD v. STATE.

No. A-11239.   Nov. 1, 1950.

(223 P. 2d 782.)

King & Wadlington, Ada, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

BRETT, J.  The plaintiff in error, Oliver Ballard, defendant below, after preliminary proceedings, was charged by information on April 27, 1948, in the district court of Pontotoc county, Okla., with the crime of the abandonment of his child Billy Joe Ballard, 3 years of age.  In the information it was alleged that he did, on February 8, 1947, and prior thereto, willfully, wrongfully, and feloniously, without justifiable excuse, wholly fail, refuse and neglect to contribute anything to the support of the said Billy Joe Ballard, but left said child in destitute and necessitous circumstances in violation of Tit. 21, § 853, O.S.A. 1941.  The defendant was tried by a jury, convicted and his punishment fixed at a term of 18 months in the penitentiary, and judgment and sentence entered in accordance with the said verdict.  From this judgment and sentence, the defendant appeals.

As hereinbefore stated, the action was brought under the provisions of Title 21, § 853, O.S.A. 1941, the pertinent part of said statute being as follows, to wit:

"Every person who shall without good cause abandon * * * his or her minor child or children under the age of fifteen years and wilfully neglect or refuse to maintain or provide for such child or children, shall be deemed guilty of a felony and upon conviction thereof, shall be punished by imprisonment in the State Penitentiary for any period of time not less than one year or more than ten years."

One of the defendant's contentions is that the evidence is insufficient to support the conviction. In this connection, the record discloses that on February 8, 1947, the date of the alleged offense herein, and for some time prior thereto, the prosecuting witness, Opal Ballard, resided in Ada, Pontotoc county, Okla., with her mother; that the prosecuting witness and the defendant were married on May 5, 1945; that thereafter, and on November 9, 1945, Billy Joe Ballard was born. Some time prior to the birth of Billy Joe Ballard the defendant had moved to California. Upon the birth of Billy Joe Ballard the prosecuting witness Opal Ballard was left with the expense of the delivery of said child and the hospital expense incident thereto, to pay as she said out of her bond money. The evidence on behalf of the prosecuting witness, Opal Ballard, further discloses that at no time from the date of their marriage until the institution of this action did the defendant ever contribute anything to the support and maintenance of Billy Joe Ballard. The record discloses further on behalf of the prosecutrix that the defendant, Oliver Ballard, returned from California in December of 1945; that she saw him in Wetumka and asked him for help in the support and maintenance of their child Billy Joe Ballard, but the defendant informed her that he could not support himself. The record further discloses that thereafter, and on February 8, 1947, she obtained a divorce from the defendant in

which she secured the sum of $1,000 alimony for herself and $25 a month for support of their minor child, Billy Joe Ballard. The record in this connection discloses that on April 8, 1948, the decree of divorce was modified in some particulars but not as to the monthly payments due said minor child, Billy Joe Ballard. It appears that the defendant moved around over the country from California to Oklahoma to New Mexico and was located at various places therein. He had no fixed place of abode. The record further shows that in August 1948, the prosecutrix, Opal Ballard, was compelled to resort to the State Welfare Fund for money with which to support and maintain said minor child, and that during most of the time prior to the institution of this action the said child was actually supported by the prosecutrix's mother and lived with her in Ada, Okla. The testimony on behalf of the defendant discloses in substance that prior to the filing of the information on April 27, 1948, he contributed to Billy Joe Ballard the sum of $4 in Wetumka, Okla., $8 in Weleetka, Okla., $18 when she left him in Wetumka, Okla., and $10 another time, he did not remember just when or where. To all practical purposes this was no support at all. Other than this and prior to the institution of this action the defendant was able to offer no substantial proof of any other contributions to the support and maintenance of Billy Joe Ballard. Subsequent to the institution of this action the defendant was able to establish the fact that he made payments through the court clerk of Pontotoc county, Okla., on September 15, 1948, in the sum of $20, October 6, 1948, in the sum of $25, September 29, $17.55, court costs, November 3, 1948, in the sum of $10, and November 15, $15, all in 1948. The court clerk's records show that no payments were made through that office for the sup-

port and maintenance of Billy Joe Ballard prior to April 27, 1948. In addition thereto the defendant was able to offer in evidence Exhibits 12 to 17, inclusive, being money order receipts evidencing the purchase of money orders which it was agreed the prosecutrix did receive from the defendant in support of the said Billy Joe Ballard. These receipts disclosed purchase of money orders issued on February 2, 1948, in the sum of $5, February 4, 1948, in the sum of $5, March 4, 1948, in the sum of $5, March 25, 1948, in the sum of $5, March 26, 1948, in the sum of $10, and September 1948, in the sum of $20, and December 1948, in the sum of $25. Other than these payments, after the institution of this prosecution the defendant was unable to offer any substantial evidence to support his contention that he gave the prosecutrix money at other times and places, which times and places he could not recall and in amounts he could not recall and for which he had no receipts. The defendant's excuse for doing no better by his child was that he was physically incapacitated by reason of hemorrhoids. We cannot omit to observe that this condition did not restrain defendant's travel or present, after the divorce, an obstacle to him taking on a third wife to support. In light of the record herein we believe the evidence though conflicting is entirely sufficient to bring the defendant within the provisions of Title 21, § 853, O.S.A. 1941. Here it appears that the defendant was without good cause for failure to support his child. In Dyer v. State, 58 Okla. Cr. 317, 52 P. 2d 1080, it was said:

"In a prosecution for neglect to support his minor child, evidence from which the absence of good cause may reasonably be inferred is sufficient to warrant a finding that the neglect was without good cause."

Therein it was further said:

" * * * to constitute the offense there must be a failure and neglect or refusal to maintain and provide for such child, and this neglect or refusal must be willful or negligent, and not a mere failure on account of inability; but a willful failure or neglect to adequately provide for such child is sufficient; a complete failure not being required."

In such a case as the one at bar willfulness or neglect may be gathered from all the circumstances and conditions involved in the case. Here the defendant's conduct prior to the institution of the criminal action certainly imports willfulness and neglect of duty. He attempted to show partial support but as hereinbefore indicated that is not enough. See, also, O'Donley v. State, 91 Okla. Cr. 352, 219 P. 2d 259. Prior to February 8, 1947, moreover, the partial support which he established was entirely inadequate to provide for even the simplest needs of a 3-year old child. Furthermore, his conduct after the institution of suit shows an intention to only partially perform his parental duty to his child. His third marriage indicates his intention to transfer his responsibility, of doubtful value, to the object of his new affections. The evidence is entirely sufficient to show both willfulness and negligence in the discharge of Ballard's parental responsibility to his 3-year old child Billy Joe Ballard.

The defendant further contends that the trial court erred in failing to declare a mistrial because of the improper remark in the county attorney's argument "* * * No wonder you hired these lawyers. They are your type. They are probably the only ones you could get to represent you". To this statement counsel for the defendant objected and the trial court admonished the jury to disregard any remarks made by counsel concerning each other or about anything outside the record. In Dixon

v. State, 56 Okla. Cr. 454, 42 P. 2d 286, 287, this court said:

"Where the county attorney in his closing argument makes the statement, if the truth be known there has been other crimes committed by the defendant, perhaps, he is guilty of misconduct, but where the court upon objections made immediately instructs the jury that the statement of the county attorney is improper and sustains the objection and directs the jury to disregard such statement, it is not prejudicial error."

In Crowell v. State, 42 Okla. Cr. 392, 276 P. 518, it was said:

"A conviction will not be reversed for alleged misconduct of the prosecuting attorney, unless this court can see that the prosecuting attorney was not only guilty of misconduct, but that such misconduct might in some degree have influenced the verdict of the jury."

This court has repeatedly held that a conviction will not be reversed where remarks of counsel in argument are assigned as error, in absence of showing that such argument, in view of the entire record, affected the defendant's substantial rights or caused prejudice against him in the minds of the jurors. Rheuark v. State, 86 Okla. Cr. 409, 193 P. 2d 621. Moreover, it has been held that such is the rule if the remarks are on some immaterial point and not injurious to the defendant's substantial rights. Williams v. State, 89 Okla. Cr. 146, 205 P. 2d 1164. Certainly this remark was made on an immaterial matter. Further, such argument must be viewed in light of the entire record. Doolin v. State, 90 Okla. Cr. 188, 212 P. 2d 136. Here the remarks themselves in light of the court's admonition could not have been prejudicial to the defendant's substantial rights.

The defendant next contends the trial court erred in not allowing the defendant to reopen the case for in-

troduction of further proof after both sides had rested. The defendant desired to offer proof by Mrs. Albert Sealy that she saw the defendant give Mrs. Opal Ballard $18 in November 1946, in Wetumka, Okla., when Mrs. Ballard was getting ready to leave the defendant, and later $2.50 just before she left him. The matter of reopening the case, in this regard, was within the second judicial discretion of the trial judge. In Hall v. State, 68 Okla. Cr. 451, 99 P. 2d 166, this court said:

"It is discretionary with the trial court to reopen the case for the purpose of introducing further evidence after both sides have closed; and unless a clear abuse of such discretion appears, no question is presented for review on appeal."

Here the burden was on the defendant to show due diligence in attempting to have Mrs. Sealy present in court before both sides rested. No such showing appears in the record. Moreover, the evidence would have been an accumulation of inadquate proof by the defendant of only partial support of his child. It would in no sense have tended to show a substantial compliance of his duty to adequately provide for his minor child. Under these conditions we cannot say there was a clear abuse of the trial court's discretion.

The defendant further contends the trial court erred in not permitting counsel to fully cross-examine the prosecutrix, Opal Ballard, and in not allowing the defendant to impeach her by proving contradictory statements made by her in the divorce suit between Mrs. Ballard and the defendant. In this connection it should be remembered that such a proceeding as herein presented involves only a single issue, Did the defendant abandon his minor child? The matters pertaining to the divorce which had already been litigated and which were immate-

rial as to defendant's guilt herein were clearly inadmissible.

The defendant then contends that the court erred in not permitting him to show that the first decree of divorce, alimony and child support was obtained by fraud, for the purpose of impeaching the prosecutrix to show her motive and animus. It would have been error to have permitted the defendant so to do since that was not the issue herein. The only issue in this case was, as we stated, a single issue, Did the defendant willfully fail to support his minor child? But conceding that the decree for alimony was fraudulently obtained, it was corrected by the deletion of the $1,000 order for the payment of alimony in the decree of April 8, 1948. Furthermore, the prosecutrix's motive and animus was not an issue herein since she was exercising a remedy provided by law for the benefit of prosecutrix and defendant's child, the use of which was occasioned by the defendant's willful failure to perform a duty required of him both morally and by law, as the father of Billy Joe Ballard. The trial court's holding was correct in not allowing the defendant to make an exploratory excursion on cross-examination of matters already determined in another case, immaterial and collateral to the issue herein.

The defendant next contends the trial court erred in commenting on the force and weight of the evidence. It appears the defendant tried to introduce in evidence his Exhibit No. 1 which was an application for citation for contempt. In this connection the record shows the following things transpired:

"Q. I will show you this paper here marked the Defendant's Exhibit One and ask you if you signed that? A. After we went back together—. Q. I didn't ask you

if you went back together. Did you sign that? A. I certainly did. By Mr. Wadlington: Now we offer this in evidence, if the court please, this is an application for contempt citation. By Mr. Long: We object to it as incompetent, irrelevant and immaterial. By Mr. Wadlington: She said she didn't do it and this shows she signed it. By the Court: Well, let it in but you can't keep on all evening and try to impeach her on immaterial matters. However, it might show that she might have been trying to get him to support the child all along. By Mr. Wadlington: We object to the remarks of the Court. By the Court: All right, show their exceptions."

He complains of the court's comment as follows: "However, it might show that she might have been trying to get him to support the child all along". The foregoing excerpts from the record disclose that Mrs Ballard admitted she signed the application for contempt, hence, it was inadmissible for the purpose for which it was offered. Moreover, it was collateral to the issue, Did the defendant abandon his minor child? and, therefore, was incompetent. However the court's comment in this regard technically constituted an infringement of the rule that trial courts should guard well their expressions and remarks to the end that the jurors may not be influenced by anything except the evidence. Keesee v. State, 46 Okla. Cr. 405, 287 P. 813; Jackson v. State, 67 Okla. Cr. 422, 94 P. 2d 851. But convictions will not be reversed for technical errors, not affecting substantial rights, or resulting in a miscarriage of justice. Cotter v. State, 74 Okla. Cr. 304, 125 P. 2d 777; Stacey v. State, 79 Okla. Cr. 417, 155 P. 2d 736. Moreover the words of the court were not nearly so detrimental to the defendant as the application for citation offered in evidence by the defendant himself. Therefore, the damage if any was precipitated by the defendant's introduction of Exhibit 1 in the evidence. Under these conditions the court's re-

430

marks would at most constitute only harmless error. In view of all the foregoing conclusions, the judgment and sentence is accordingly affirmed.

JONES, P. J., and POWELL, J., concur.