Thomas Elmer
**BROADDRICK, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–82–344.**

Court of Criminal Appeals of Oklahoma.

Sept. 3, 1985.

---

Thomas G. Smith, Jr., Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Hugh A. Manning, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Thomas Elmer Broaddrick, the appellant herein, was charged in Osage County District Court, Case No. CRF–81–104, with committing First Degree Murder in violation of 21 O.S.1981, § 701.7. He was represented by counsel and tried by a jury, with the Honorable Mermon H. Potter presiding. The jury found the appellant guilty as charged and, having found (1) the appellant had been previously convicted of two felonies involving the use or threat of violence and (2) the existence of a probability that the appellant would commit criminal acts of violence that would constitute a continuing threat to society, sentenced the appellant to death. From that judgment and sentence, the appellant has perfected an appeal to this Court. We reverse and remand for a new trial.

Thomas Broaddrick and Nolan Ray Craft, both from the Tulsa area, were friends and had known each other both in Tulsa and through their involvements with the penal system. The problems between them began when Broaddrick became romantically involved with Paula Oates, who had been previously involved with Nolan Craft. (Paula married Craft and then Broaddrick, although the record reveals she was never divorced from a previous husband, Kinnard Oates.) Craft's outrage over the relationship between Broaddrick and Paula caused him to convey many threats throughout Tulsa that he would kill Broaddrick when he saw him.

On the evening of June 10, 1981, Broaddrick, accompanied by Paula Oates, went to see Craft, who was residing in Paula's apartment in the Osage Apartment Complex. After Paula lured Craft out of the apartment, Broaddrick ordered him to walk to the side of the building. Craft began walking toward the street instead. Suddenly, Craft turned around with his hands raised. Broaddrick shot him six times with a .38 caliber revolver. All six bullets, three of which inflicted fatal wounds, hit Craft.

The foregoing facts are not disputed. The State's theory of the case is that the appellant went to Craft's apartment to kill him. The appellant's theory is that Broaddrick went to talk to Craft to resolve their differences so that the friendship could be resumed, Paula could remove her personal property that was still in the apartment, and Broaddrick and Paula could begin living normal lives without constantly moving to keep Craft from finding and killing

them. In Broaddrick's opinion, the only way to accomplish this was to unexpectedly confront Craft with gun in hand. When Broaddrick did this, Craft raised his hands and turned suddenly. Without realizing what was happening, the appellant shot Craft in self-defense.

■ The appellant's first assignment of error alleges that the trial court erred in denying his written requested instruction on self-defense. The trial court's refusal to instruct the jury on self-defense was based on *Woods v. State*, 485 P.2d 486 (Okl.Cr.1971), wherein this Court held that the evidence did not warrant an instruction on self-defense. The *Woods* case, however, is distinguishable from the case at bar.

Connie Gray had suspected that the defendant in *Woods* had cheated in a poker game and threatened "to get even" with him. After arming himself later that night, Woods saw two persons standing in the driveway, thought he heard two shots and that they were trying to kill him, so he fired his rifle at them. This Court affirmed the trial court's refusal to give the appellant's requested instruction on self-defense because the defendant's statement did not establish that he was acting in self-defense. Quoting from *Jamison v. State*, 304 P.2d 371 (Okl.Cr.1956), the Court stated as follows:

> Fear, based upon threats alone unless accompanied by some overt act or demonstration designed to execute the threats which furnished the defendant some reason to believe that he was in danger of being killed or suffering great bodily injury at the hands of the deceased, will not support a plea of self defense and mitigate the homicide.

*Woods*, 485 P.2d at 488.

One fact that distinguishes the case at bar from *Woods* is that Craft turned suddenly with his hands raised. Paula Oates testified that she thought Craft was going to try to take the gun away from Broaddrick. Broaddrick testified that he did not really know what happened, that when Craft turned around, he heard gun shots but did not know whether he was shooting

or being shot. We are of the opinion that Craft's movement constituted an overt act or demonstration to execute Craft's threat to kill Broaddrick.

The other fact that distinguishes the present case from *Woods* is that in *Woods*, the defendant could not see who he was shooting. Broaddrick, however, was standing face to face with the man who had threatened to kill him, a man who was well-known for his propensity toward violence.

■ This Court has long held that the defendant is entitled, as a matter of law, to have the jury instructed on the law governing his theory of the case if it finds possible support in the evidence. *Davis v. State*, 665 P.2d 1186 (Okl.Cr.1983); *Cordray v. State*, 268 P.2d 316 (Okl.Cr.1954). This is so even if the evidence is discredited, *Holt v. State*, 278 P.2d 855 (Okl.Cr. 1955):

> While admitting the possession of the Federal liquor stamp, [the defendant] swore that he had quit the liquor business. Of course defendant may have committed perjury in a number of instances in his testimony. And it is true that the fact of past convictions for crime so weakened defendant's evidence as to credibility that it could easily be said that no jury composed of persons adhering to the oath they were compelled to take as jurors, on a future trial could on the basis of the evidence in the present record, fail to again convict the defendant of the charge here involved. *Still, the jury must be advised of defendant's theory of defense where there is evidence to support it, even though such evidence is discredited.*

*Id.* at 857. (Emphasis added).

A United States Supreme Court case which is factually similar, although not identical, to the present case is *Allison v. United States*, 160 U.S. 203, 16 S.Ct. 252, 40 L.Ed. 395 (1895). In that case the defendant shot his father, who had repeatedly threatened the son's life, when the father moved his hand toward his pocket as if

to draw a gun, which he was known to carry constantly. In fact, the father was unarmed at the time. The trial court delivered self-defense instructions, but the instructions possibly were defeated by hostile intimations of the trial judge. Concerning the defense theory of the case, the Honorable Court stated:

What is or is not an overt demonstration of violence varies with the circumstances. Under some circumstances a slight movement may justify instant action because of reasonable apprehension of danger; under other circumstances this would not be so. And it is for the jury, and not for the judge, passing upon the weight and effect of the evidence, to determine how this may be. In this case it was essential to the defense that the jury should be clearly and distinctly advised as to the bearing of the threats and the appearance of danger at the moment, from defendant's standpoint, and particularly so as it did not appear that the deceased then had a pistol upon him, though there was evidence that it was his habit to carry one....

*Id.* at 216, 16 S.Ct. at 257.

The same holds true in the case at bar. Although the evidence presents a close question, we find that there was sufficient evidence to warrant a self-defense instruction. Insofar as appellant requested an instruction on self-defense, the case must be reversed and remanded to the district court for a new trial. As Judge Bussey points out in his dissent, the State presented overwhelming evidence of appellant's guilt of having committed a homicide. But that is not the question presented to this Court. This Court is required to determine whether or not the requested instruction on self-defense should have been given and a majority of the Court believes it should have been given. Contrary to what the dissent states, most of the evidence justifying the instruction was presented by the State's own witnesses.

As there is evidence that the appellant may have been the aggressor, the trial court also should have given instructions concerning the unavailability of this defense to an aggressor and the reestablishment of the defense if the original aggressor attempts to withdraw from the altercation. *See* OUJI–CR 743, 745–747, 749.

On retrial the prosecutor should be careful not to jeopardize the trial by making improper comments. He should particularly refrain from referring to our corrections system as a "revolving door system" and invoking societal alarm with statements such as, "[T]his man constitutes a threat to your little piece of society. I don't know whether he's going to float around in Grainola, Barnsdall, Sand Springs, Pawhuska —". *See Franks v. State,* 636 P.2d 361 (Okl.Cr.1981) and *Cobbs v. State,* 629 P.2d 368 (Okl.Cr.1981), respectively.

REVERSED and REMANDED for a new trial.

PARKS, P.J., specially concurring.

BUSSEY, J., dissents.

PARKS, Presiding Judge, specially concurring:

I am of the opinion that the testimony in this case created a fact situation for the jury to resolve upon proper instruction, to-wit: Whether Broaddrick was acting in self defense when he shot Craft.

Paula Oates testified that when Ray Craft made his sudden move, she thought he "was either *going to reach for a gun* or try to take the gun away from Tommy that Tommy had or do something stupid." (Emphasis added). She told another individual that when Craft made his sudden move, the appellant cried, "No, Ray, don't." This witness also was told by Mrs. Oates that she thought Craft was going for a gun. Immediately after the shooting, appellant, according to Ms. Oates, pounded the dashboard of his car, saying, "Why did he make me do that." Based on this evidence and other testimony in the record, I agree with Judge Brett that the trial court erred in refusing the appellant's requested instruction on this issue.

It appears that the dissent would urge the trial judge to make certain factual find-

ings before an instruction could be given. This would be clearly contrary to 22 O.S. 1981, § 834, which states, in pertinent part, that "questions of law are to be decided by the court, and the questions of fact are to be decided by the jury...." Our current approach—the practice in this State since time immemorial—has been to require the trial court to give a theory of defense instruction, if requested, when there is *any* evidence in the record to support the defense, and even if the evidence is discredited. *See White v. State*, 458 P.2d 322, 327 (Okl.Cr.1969). *See also Finley v. State*, 84 Okl.Cr. 309, 181 P.2d 849 (1947) (theory of defense instruction should be given where that position finds "possible support in the evidence"). Any heavier standard would usurp the sacred obligation of the jury to be the exclusive trier of fact.

BUSSEY, Judge, dissenting:

I am of the opinion that the judgment and sentence in this case should be affirmed.

At trial, the State presented overwhelming evidence of appellant's guilt, and the record is devoid of any evidence that appellant acted in self defense when he shot Mr. Craft. Therefore, I believe that the trial court acted properly in denying appellant's written requested instruction on self defense.

As the majority points out, the facts are not disputed. On the evening of June 10, 1981, appellant accompanied by Paula Oates, went to see Craft, who was residing in Paula's apartment in the Osage Apartment Complex. After Paula lured Craft out of the apartment, appellant ordered him to walk to the side of the building. Craft began walking toward the street instead. Suddenly, Craft raised his hands and turned around. The appellant shot him six times with a .38 caliber revolver, resulting in his death.

The law is well settled in Oklahoma that if there is no evidence in the record to support an instruction it should not be given. *See, Nauni v. State*, 670 P.2d 126 (Okl.Cr.1983). In the instant case, there is not a scintilla of evidence that appellant acted in self defense. When an unarmed person raises his hands and turns around and is shot six times by an armed person who has come to his residence, lured him outside, and pointed a loaded firearm at him, I am of the opinion that it is inconceivable that the trial court should give a self defense instruction. I am aware of the fact that Craft made threats on appellant's life and that he was known to carry weapons. However, if we interpret Craft's actions, raising his hands and turning around, as an "overt act or demonstration designed to execute the threats which furnished the defendant some reason to believe that he was in danger of being killed or suffering great bodily injury at the hands of the deceased," then a self defense instruction would be required under every imaginable circumstance.

In *Allison v. State*, where the Supreme Court stated, "What is or is not an overt demonstration of violence varies with the circumstances. Under some circumstances a slight movement may justify instant action because of reasonable apprehension of danger; under other circumstances this would not be so," the evidence was that the deceased who had threatened the defendant and who carried a gun constantly, made a sudden movement with his hand toward his pocket. Obviously, the sudden hand movement could cause a reasonable apprehension of danger under the circumstances of *Allison*. However, in the instant case, Craft raised his hands and turned around while appellant had a gun pointed at him. Certainly, this movement could not have produced any reasonable apprehension on the part of appellant.

Therefore, I am of the opinion that the trial court acted properly in denying appellant's written requested instruction on self defense, and I would affirm the judgment and sentence.