Donald Wayne NANCE, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–89–734.

Court of Criminal Appeals of Oklahoma.

Aug. 28, 1992.

As Corrected Sept. 15, 1992.

Ronald F. Evans, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen. of Oklahoma and A. Diane Hammons, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Presiding Judge:

Appellant, Donald Wayne Nance, was convicted of Murder in the First Degree after a trial by jury in Case No. CRF–85–4577, in the District Court of Oklahoma County. The statutory punishment for the crime was life imprisonment and the trial court sentenced Appellant accordingly. Appellant has raised a number of allegations for our review, however, we find that one issue, the proper instruction of the jury, is dispositive of the case. Accordingly, we will confine our comments to that question.

Following the presentation of the evidence in this case, Appellant orally requested that the trial court instruct the jury on the law concerning his theory of defense, that being that the shooting was accidental. Specifically, Appellant requested that the court give the standard, uniform instructions concerning accidental homicide. The trial court refused on the basis that Appellant had not submitted the proposed instructions, Oklahoma Uniform Jury Instruction, Criminal (OUJI–CR) Nos. 725 and 727, in writing. Appellant then requested a thirty minute recess in order to obtain a copy of the written instructions. This request was also denied. No instructions on Appellant's theory of defense were given to the jury. We find this deficit to be base, fundamental error.

This case involved the shooting death of Rodney Johnson. The evidence at trial was largely undisputed. Testimony established that on September 1, 1985, Appellant told his girlfriend, Sandra Marshall, that he was going to Abilene, Texas, to visit his family and asked her to go with him. Sandra, who lived with Appellant, told him that she did not want to go. Appellant left the apartment with his suitcase and a pistol case containing .357 and .44 magnum pistols.

After Appellant left the apartment, Sandra called a friend and made plans to go out late in the evening. She discussed her intention to call Johnson, whom she had been interested in for some time, to arrange a liaison. When she called Johnson, he agreed to come over to her apartment around 5:00. Sometime, late in the evening, Appellant called the apartment and told Sandra that he was on his way home. He did not tell her where he was calling from, however, Sandra assumed that he was calling from his parents home in Abilene.

In fact, Appellant never went to Abilene that day. Instead, he visited a number of his friends. He told them that he was supposed to go visit his parents, but that

he was too tired to drive (he worked nights at the post office and then stayed up late after work) and wanted company on the trip. When none of the friends would agree to accompany him to Abilene, he took a nap and then went to get something to eat. He visited several other friends prior to calling Sandra to tell her he was on his way home.

When Appellant got home, he took the .44 Magnum out of the case and took it to the apartment with him. He testified at trial that he had been robbed three times and carried the gun for protection. He testified that he saw a light on in the apartment, heard a man's voice, then unlocked the door. Sandra testified that he later told her that he had been listening outside the patio doors for some time.

When Appellant went into the apartment, he saw Marshall turning the corner toward the bathroom in her robe. He followed her into the bathroom and saw that someone was in the shower. Marshall testified that Appellant pulled back the curtain, waved the gun at Johnson, who was nude in the shower, and told him to get out. Marshall told the court that she left the bathroom intending to get clothes out of the closet. She testified that she heard a gunshot and then went back to the bathroom in time to see Johnson fall.

Appellant's version of the actual incident was distinctly different from Marshall's story. Appellant claimed that after he ordered Johnson to leave the apartment, he stepped backwards away from the bathtub. Because the bathroom was small, he bumped into Marshall, who tried to grab the gun. He claims that when he tried to protect himself from Marshall's grab, he turned toward Johnson who also grabbed at the gun. Appellant testified that he kicked Johnson, then all three of them fell into the floor. He told the court that as he fell, the gun discharged, resulting in the death of Johnson from a single shot to the head.

 We have long held that a criminal defendant must be afforded the opportunity to have a jury consider his theory of defense whether or not he requests instruc-tions on that ground at trial if the evidence produced at trial supports the defense. *Cherbonnier v. State*, 751 P.2d 1098, 1099 (Okl.Cr.1988); *Broaddrick v. State*, 706 P.2d 534, 536 (Okl.Cr.1985); *Payton v. State*, 4 Okl.Cr. 316, 111 P. 666 (1910). This is true regardless of the relative merit of the evidence offered in support of the defense. Any evidence, without consideration of its veracity in light of the weight of the evidence, requires that instruction be given so that the jury may make the ultimate decision whether to accept or reject the offered defense. *Grayson v. State*, 687 P.2d 747 (Okl.Cr.1984); *Holt v. State*, 278 P.2d 855 (Okl.Cr.1955).

In the present case, Appellant testified that the shooting was accidental. He explained a series of events, which if believed, would constitute a defense to the crime of first degree murder. Clearly the trial court erred when it failed to instruct on this basis. Regardless of the lack of written request for the instructions, the trial court should have moved *sua sponte* to ensure that the jury was properly instructed in all matters of law which they were to consider. *Lester v. State*, 408 P.2d 563 (Okl.Cr.1965); *Davidson v. State*, 330 P.2d 607 (Okl.Cr.1958). On this basis, we find that the conviction must be reversed and the case remanded for a new trial.

This result is even more compelling after consideration of the events which occurred in the trial court's chambers, prior to the instruction of the jury. After examination of the instructions proposed by the court, counsel for Appellant verbally requested that the court include the two uniform instructions which would advise the jury on the elements of the defense presented. The trial court refused to incorporate these two instructions on the basis that they were not offered in writing and then denied Appellant's request for a short continuance to obtain copies of the instructions for submission to the court. While we agree with the trial court that this Court has long held that requested instructions must be offered in writing, we believe that the time has come to change the rule in certain instances.

As noted by the trial court, the well settled rule in this state requires that a defendant offer any requested instructions in writing prior to the settlement of the actual jury charge. *Doolin v. State*, 90 Okl.Cr. 188, 212 P.2d 136 (1949); *Green v. State*, 70 Okl.Cr. 228, 105 P.2d 795 (1940); *Zeligson v. State*, 43 Okl.Cr. 24, 276 P. 791 (1929). The reason for this long standing requirement was explained by the Supreme Court in *Heatley v. Territory*, 15 Okl. 72, 78 P. 79 (1904):

> In this connection, a distinction must be observed between the giving of erroneous instructions and the failure to give correct and adequate instructions. On the former case the instruction is sufficiently called to the attention of the trial court by a single objection and exception, and it is not necessary to request and submit a correct instruction to be given in place of the erroneous one. But in the case of a mere failure to give corrected instructions covering the case, the error is not available on appeal, in the absence of a request for a proper instruction.

*Id.*, 78 P. at 80.

The logic of the Court is clear; without a written copy of the proposed and rejected instruction, the reviewing court cannot properly judge whether or not the content of the instruction was appropriate and should have been given at trial. The rule, then is designed to facilitate appellate review of trial court proceedings and should not be used by a trial court to avoid properly instructing the jury.

In the case at hand, where the content of the instructions is not only mandated, but also contained in reference material widely available, the concerns underlying the creation of the rule are not appropriate. Any necessary review may be accomplished by reference to the instruction, located by the inclusion in the record of its number.

■ We find that while the wisdom of this rule is still absolutely valid, in practice today, the requirement should be subject to a slight modification. In cases such as the one before us, the requested instructions were part of the compiled, mandated, uniform set of instructions adopted and re-quired for use in this state. Appellant asked the court to give two instructions out of this set, without modification. Given that these instructions are an integral part of criminal justice in Oklahoma (certainly each judge should have a set in close proximity), the rigid rule requiring submission of requested instructions in writing, when they are part of the uniform instructions, is redundant and without practical purpose since these instructions are already set out, in proper form, in OUJI–CR. Certainly as is illustrated here, the failure of the trial court to use those resources close at hand, resulting in the need for a new trial, rigid application of a rule which serves no purpose is not justifiable. Accordingly, we hold that when specific instructions are requested in a timely manner, and those instructions are *unmodified* uniform instructions, contained in OUJI–CR, the request for the instruction by number will be sufficient to satisfy the requirement that the request be in writing.

■ This change undertaken today is slight, and only applies in the case of the uniform instructions, however, it certainly satisfies the underlying reason which has long justified the need for written requests. If instruction other than one of the uniform instructions is requested, or if any modifications to the uniform instruction are requested, then those requests must still be fully set out in writing as has always been the case.

Based on our finding that the trial court failed to instruct the jury on Appellant's theory of defense, this case is REVERSED and REMANDED for a new trial.

BRETT, PARKS and JOHNSON, JJ., concur.

LUMPKIN, V.P.J., concurs in part/dissents in part.

LUMPKIN, Vice Presiding Judge, concurring in part/dissenting in part.

Based on the facts revealed by the record in this case, I must concur in the results reached by the Court. However, I must dissent to the Court's determination that in substance, an attorney can be dilatory, wait

until just before the Court is to instruct the jury, orally request an instruction by number from the Oklahoma Uniform Jury Instruction–Criminal instruction book, and comply with his or her responsibility as an officer of the court.

This Court should never let itself be so removed from the realities of the rigors of the everyday management of trial practice that it loses sight of the pressing demands constantly placed on trial judges. We must be ever mindful that until the State of Oklahoma provides the District Courts with the automated word processing and computer equipment it needs to perform its duties, trial judges are relegated to the archaic requirement of individually typing each instruction. When a request for an instruction is not made until the last minute, it creates a burden upon the trial court that this Court should not condone. The basic threshold of professional responsibility for a trial attorney is that he or she has prepared and knows his or her case, which includes the instructions required to be submitted to the trial judge for use at the conclusion of the trial.

I agree the trial judge in this case should have allowed the defense attorney an additional thirty minutes to prepare the requested instructions in writing. However, I cannot agree to the carte blanche ruling in this case that all a trial attorney must do is wait until the end of trial, when the Court has already prepared a set of instructions, and request additional instructions by OUJI–Cr. number. What if the trial attorney requests eight or ten different instructions instead of just one? Why should the trial judge be required to be the secretary for the trial attorney? What about the jurors who have to cool their heels waiting for instructions to be prepared which should have already been prepared? The naivete of the Court in regard to the management requirements of a jury trial has precluded consideration of these and many other issues. In addition, it can hardly be said that the request for the instruction was "timely made" under the facts of this case.

Very little effort is required for a trial attorney to prepare his or her requested instructions in the course of trial preparation. Indeed, it is a responsibility which was abdicated in this case. This Court should not establish a rule which rewards lack of preparation or laziness on the part of a trial attorney. Therefore, I must dissent to the Court's decision which erodes the professional responsibility of trial attorneys. Based on the Court's decision in this case, it appears the trial judges must shoulder the responsibility of requiring timely preparation and submission of instructions by trial attorneys. One method of accomplishing this requirement is for the trial judge to enter a scheduling order in the case that requires trial counsel to submit requested instructions to the Court in writing by a day certain, either prior to the day of trial or during the course of the trial. This order will place the parties on notice with sufficient time to prepare and present requested instructions to the Court.

I must also disagree with the general statements the Court utilizes in discussing instructions on a defendant's theory of defense. The general paraphrasing of previous decisions of this Court skew the actual rulings in those cases. In addition, the Court cites to *Lester v. State*, 408 P.2d 563 (Okl.Cr.1965), without recognizing that *Lester* was modified in *Kinsey v. State*, 798 P.2d 630, 633 (Okl.Cr.1990). The Court in *Kinsey* provided the trial court must first determine if the evidence is sufficient to support an instruction on a defendant's theory of defense. The theory of defense must be tenable as a matter of law and be supported by the evidence before there is any requirement to provide an instruction to the jury. Therefore, the right to a jury instruction regarding a defendant's theory of defense is not as broad as stated by the Court. In addition, *Lester* does not state that "regardless of the lack of written request" an instruction on the theory of defense must be given. Further, a reading of *Cherbonnier v. State*, 751 P.2d 1098 (Okl. Cr.1988), and *Broaddrick v. State*, 706 P.2d 534 (Okl.Cr.1985), fails to reveal where the Court predicated its ruling on "whether or not he (defendant) requests

instructions on that ground at trial" as related by the Court in this case. I also fail to find the holding in *Grayson v. State*, 687 P.2d 747 (Okl.Cr.1984), supports the Court's statement that "[a]ny evidence, without consideration of its veracity in light of the weight of the evidence, requires that instruction be given so that the jury may make the ultimate decision whether to accept or reject the offered defense". In fact, the Court in *Grayson* determined that appellant in that case had not "even reached the minimal requirement of producing sufficient evidence to raise a reasonable doubt". Therefore, it does not appear the authority cited supports the holding the Court seeks to make in this opinion.